title the plaintiffs to recover, they had to prove the loan. This they alleged in the complaint, and had to establish by proof at the trial. The exception to the charge that "the burden is on the defendant to prove that it was a gift instead of a loan" was well taken.

The judgment appealed from is therefore reversed, and the complaint dismissed, with costs.

SCOTT and PAGE, JJ., concur.

CLARKE, P. J. I concur in the reversal of this judgment upon the error in the charge pointed out by Mr. Justice McLAUGHLIN, but I think a question of fact is presented which requires submission to a jury. I therefore vote to reverse and grant a new trial, with costs to the appellant to abide the event.

LAUGHLIN, J., concurs.

---

### HORAN v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, Second Department. January 28, 1916.)

1. MASTER AND SERVANT ☞278—INJURIES TO SERVANT—LIABILITY—EVIDENCE.
Evidence *held* insufficient to show liability of a railroad for death of its lineman by electrocution, on the ground that a ladder furnished him with which to work was insecure.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

2. MASTER AND SERVANT ☞278—INJURIES TO SERVANT—LIABILITY—EVIDENCE.
Evidence *held* insufficient to show liability of a railroad for death of its lineman by electrocution on the ground that defendant failed to furnish deceased lineman with proper rubber gloves for his protection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

3. MASTER AND SERVANT ☞137—INJURIES TO SERVANT—ELECTRIC WIRES.
Where an employer furnishes an experienced employé with proper rubber gloves for his protection in working on live electric wires, the employer's foreman is not required to keep watch on the servant to see that he uses the gloves, instead of canvas or linen gloves.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. ☞137.]

4. MASTER AND SERVANT ☞219—INJURIES TO SERVANT—ASSUMPTION OF RISK.
Where an unsuitable ladder was furnished an experienced lineman, he assumed the risk incident to its use, its insufficiency being obvious; and it is error to refuse so to charge the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. ☞219.]

Appeal from Trial Term, Westchester County.

Action by Mary Horan, as administratrix of the estate of David Horan, deceased, against the New York, New Haven & Hartford Railroad Company. From a judgment for plaintiff, and an order denying defendant's motion for new trial, and an order granting plaintiff an extra allowance, defendant appeals. Reversed, and new trial granted.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before JENKS, P. J., and CARR, STAPLETON, RICH, and PUTNAM, JJ.

James W. Carpenter, of Brooklyn, for appellant.

Thomas J. O'Neill, of New York City (Leonard F. Fish, of New York City, on the brief), for respondent.

·STAPLETON, J.  The plaintiff's intestate was killed by electricity in the state of Connecticut on the 6th day of April, 1914, about 10 o'clock in the forenoon.  He was in defendant's employment, and was engaged in installing new safety devices, called protectors, designed to sustain defendant's signal wires in the event of a break.  The protectors are composed of metal shafts and iron caps.  They are attached to the wires by two bolts and set over the insulators.  The wires are used to signal trains operated by the defendant as a common carrier by railroad while engaged in commerce between several states.

The deceased worked in an electrical construction gang composed of McMillan, the foreman, Welden, the groundman and lineman's helper, and Mooney and the deceased, linemen.  McMillan worked on the next pole, about 300 feet away, grounding the wires; Welden worked on the ground; Mooney and deceased on a metal arm of a latticed steel strut, which arm is 35 feet above a concrete base resting upon the ground.  The strut has two arms, on the lower of which wires are strung.  The pole pin wire (that is, the one nearest the pole) was grounded and de-energized.  It was the wire upon which the linemen were to work first.  The linemen ascended the pole by the lattice work to the arm.  They afterwards hoisted, by rope, a ladder and a pig (also called a shield).  The ladder was a hook ladder about six or seven feet long.  The hooks were metal; the rungs, wood.  The ladder was attached to and suspended from the lower arm, and was steadied by a rope fastened to the lower rung and to a pier on the ground.  It was used by the men to stand on when they worked on the end wire.  The pig is a piece of slit rubber hose, which was to be placed as a shield over the wire on which the men worked.  That side of the pole which is nearer the track is known as the track side, and the opposite side is known as the field side.  The pin or wire which is nearer the pole is known as the pole pin; the one further away, as the end pin.  There are two signal wires on the field side of the pole.  It is essential to the signal system that one of these wires be always energized.  The wires were uninsulated.  When ungrounded, the wires carry 2,200 volts of electricity.  This voltage is lethal.  After the protectors were affixed to the pole pin, or wire, on the field side of the pole, the decedent proceeded to get ready to work on the end pin or wire.  The ladder was adjusted between the two wires, suspended from the lower arm.  The pig was on the wire which had been de-energized.  The method was then to signal McMillan, located on the next strut, to ground the end pin or wire by an appliance known as a ground stick, and to wait until he signaled that he had done so before going near it.  For work on the pole pin the ladder is unnecessary.

The decedent was shocked by contact with the outer wire before it

was grounded. He was wearing linen or canvas gloves. There is evidence from which it is inferable that deceased was standing on the ladder at the time of contact. He was an experienced lineman. Mc-Millan is dead. Mooney and Welden were witnesses. No other person was present at the time of the casualty. The personal representative of the deceased employé brought this action against his employer for damages for the benefit of his surviving widow and child, basing her action upon the act relating to the liability of common carriers by railroad to their employés in certain cases, enacted by Congress and approved April 22, 1908, as amended April 5, 1910. 35 Statutes at Large, p. 65, c. 149; 36 Statutes at Large, p. 291, c. 143 (Comp. St. 1913, §§ 8657–8665). Pedersen v. Delaware, Lackawanna & Western R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Deal v. Coal & Coke Ry. Co. (D. C.) 215 Fed. 285. The jury gave her a verdict. It is from the judgment entered upon that verdict, and from an order denying defendant's motion to set aside the verdict and for a new trial, that this appeal is taken.

The case was submitted to the jury on three specifications of negligence, asserted to be actionable under the act cited: (a) The ladder furnished was insecure, insufficient, and unsafe; (b) the defendant omitted to furnish proper rubber gloves; (c) even if the jury found that proper rubber gloves were furnished by the employer, the foreman, defendant's employé, was negligent in permitting the linemen to work without rubber gloves, and in permitting them to wear linen or canvas gloves, which are unprotective.

[1-3] We have critically searched this record in vain for facts or reasonable inferences which would authorize the jury in finding liability under any one of these specifications. Indeed, all the evidence is the other way. As to specification (c) we may also say: We know no rule of law which requires the foreman of an employer to keep watch upon an experienced lineman, to discover whether he is using proper gloves which the company supplied for the lineman's protection, and, upon discovery, to insist upon the lineman's using them. See Depirro v. Robins Co., 210 N. Y. 93, 95, 103 N. E. 894; Davis v. Gas Engine & Power Co., 148 App. Div. 791, 792, 133 N. Y. Supp. 247.

[4] Had there been evidence that the ladder was unsuitable, and that it was the proximate cause of the injury, its unfitness was obvious to the intestate, an experienced lineman, and he assumed the risk of using it. It was therefore reversible error to refuse so to charge on request. Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Toledo, St. L. & W. R. R. Co. v. Slavin, 236 U. S. 454, 35 Sup. Ct. 306, 59 L. Ed. 671; Collelli v. Turner, 215 N. Y. 675, 109 N. E. 83. There was an order granting plaintiff an extra allowance, which is involved in the appeal and falls with the judgment.

The judgment and orders should be reversed, and a new trial granted; costs to abide the event. All concur.