In reversing a judgment entered upon a verdict of no cause of action rendered by a jury, this court put the determination broadly upon the proposition that the verdict was so clearly against the weight of evidence that the judgment could not be permitted to stand; but the discussion shows conclusively that this court is committed to the theory that the articles published by the defendant, and of which the plaintiff complains, were libelous per se, and that in the absence of justification the plaintiff is entitled to substantial damages.

Upon the trial of the action now brought up for review the learned trial court charged in harmony with this theory, and these present the only substantial objections urged against the judgment in favor of the plaintiff. We see no reason for changing the views which we expressed upon the former appeal, and the judgment and order appealed from should be affirmed.

The judgment and order appealed from should be affirmed, with costs. All concur, except COCHRANE, J., who dissents on the ground that the court erroneously charged the jury as matter of law that the article constituting the basis of the second cause of action charged the plaintiff with the crime of larceny, and that the articles constituting the basis of the third cause of action charged the plaintiff with the crime of arson.

---

(174 App. Div. 924)

### CHROSCIEL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. June 29, 1916.)

1. COMMERCE ⊚⟾27—WHAT IS "INTERSTATE COMMERCE."

    A worker, in constructing a railroad station being used for both interstate and intrastate traffic, is engaged in the former, so as to bring his case, if he is injured, within the exclusive operation of the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]).

    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⊚⟾27.

    For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. PLEADING ⊚⟾51—COMPLAINT—SEPARATE CAUSES OF ACTION.

    A complaint against a railroad by a servant for injuries in a single accident, pleading facts showing negligence under both the state (Consol. Laws, c. 31, §§ 200–204) and federal Employers' Liability Acts, does not allege two separate causes of action, although such may be its form.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 112; Dec. Dig. ⊚⟾51.]

3. PLEADING ⊚⟾339—WITHDRAWAL OF CAUSE OF ACTION.

    In a suit for death of a railroad employé, where plaintiff mistakenly alleged as a separate cause of action alleged facts showing negligence under the federal act, the granting of her later motion to withdraw such cause of action should be treated as a withdrawal of the allegations in the complaint so designated, and the case treated as though these allegations were not in the complaint.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1033–1045; Dec. Dig. ⊚⟾339.]

⊚⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **MASTER AND SERVANT** @⇒264(10)—ACTION—PLEADING—PROOF AND VARIANCE.

In such action, it is not necessary for the defendant to have affirmatively pleaded the federal Employers' Liability Act or its engagement in interstate commerce, in order to raise the bar of the exclusive application of the federal statute against the maintenance of an action under the state Employers' Liability Act, where it appears from cross-examination of one of plaintiff's witnesses that defendant was engaged in interstate commerce; the case pleaded and proved not being the same.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 870; Dec. Dig. @⇒264(10).]

5. **COURTS** @⇒97(1)—RULES OF DECISION—FOLLOWING FEDERAL COURT ON FEDERAL QUESTIONS.

State courts should follow decisions of federal courts on federal questions.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 329; Dec. Dig. @⇒97(1).]

Appeal from Trial Term, Kings County.

Action by Anna Chrosciel, as administratrix, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and order denying new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

Robert A. Kutschbach, of New York City, for appellant.

Otto H. Droege, of New York City, for respondent.

MILLS, J. This is an appeal by the defendant from a judgment entered in Kings county November 13, 1915, in favor of plaintiff for $11,280.43, upon a verdict in favor of the plaintiff for $10,000, rendered at the Kings Trial Term, and from an order made at said term denying defendant's motion for a new trial made upon the minutes. The action was brought by the widow and administratrix of the decedent, John Chrosciel, to recover damages for his death, upon the claim that on December 8, 1913, he was killed through the negligence of the defendant while working in its employment upon the construction of the Grand Central Terminal in the city of New York. The answer put in issue the material allegations of the complaint. The record in the main presents undisputed facts. They are the following:

The defendant was engaged in constructing what is known as the Grand Central Terminal for the joint use of its railroad lines and of the line of the New York, New Haven & Hartford Railroad Company. As a part of such terminal construction there was a track connecting the upper level with the lower level, with a concrete wall along the side of it connecting the two levels, and an iron fence upon the top of the wall. The defendant was having that fence taken from the top of the wall, where it had been found to be too near passing trains, and anchored in holes to be drilled 5 inches deep on the side of the wall at certain marked points. At that place a scaffold had been suspended from the fence, so that it stood about 3 feet below the upper level and 9 to 10 feet above the lower. It consisted of three planks, each 10

---

inches wide and 2 inches thick and 16 feet long, placed upon two crosspieces 2x6 inches, at or near the ends, and those crosspieces were suspended by ropes from the iron fence above. There was a center crosspiece, 2x4 inches, under the middle of the planks, and the planks were nailed to the three crosspieces, but the center crosspiece had no support except such nailing. The scaffold was suspended by the side of the wall and near it. The crosspieces projected about a foot beyond the three planks, except that the middle crosspiece so projected about 3 inches less, or about 9 inches in all.

The decedent was a drill machine runner, and, with the witness Quinn as his helper, was, by a foreman, about 2 p. m., sent to drill the said holes from such scaffold. Quinn reached the scaffold first, and said to the foreman that it was too narrow; but the foreman answered him merely that, when they had the holes drilled, he would have the carpenters change the scaffold, thus implying, at least, that they should do that drilling with the scaffold as it was. When the decedent arrived in a few minutes, Quinn and he both remarked to themselves that the scaffold was too narrow, and decedent said that there was room on the slats for another board; and he then went to a pile of lumber near by, took from it a plank about 10 inches wide, and brought it to the scaffold, and the two placed it upon the projections of the crosspieces, but it was not long enough to rest upon both end crosspieces, so they rested it upon one of the end crosspieces and upon the middle one only. When the two men came to the scaffold, it was sufficiently light there for them to see plainly its construction. The scaffold had been built and hung by the carpenters, whose practice it was to attend to such work. The two men, the decedent and Quinn, had worked together about six months. The drilling machine was about 3 feet long, and the driller had to hold it in front of him in operating it. The two men did not nail or fasten the fourth board, except to rest it as above stated by its own weight. After they had drilled for a few minutes, standing upon the fourth or outer plank, the middle crosspiece gave way, the nails drawing out, and the decedent fell with his machine to the lower level, some 9 or 10 feet, and was killed.

The complaint purported to set forth two causes of action, viz.: (a) One under the state Employers' Liability Act, with service of proper notice; and (b) one under the federal Employers' Liability Act. The answer denied the material allegations of each such division of the complaint, except the defendant's incorporation and its doing of the Terminal construction work, and alleged, as defenses, contributory negligence and assumption of risk.

Upon the cross-examination of plaintiff's witness, the said Quinn, it appeared without objection that the trains running upon such upper level were engaged in interstate traffic; and when plaintiff rested the defendant moved to dismiss upon the usual ground, and also upon the ground that "the accident arose in interstate commerce," and is governed exclusively by the federal Employers' Liability Act," and also upon the ground that the decedent assumed the risk. Such motion was denied, defendant excepting.

Upon the defendant's side it was clearly proven that the Grand Cen-

tral Terminal is engaged in interstate traffic by both its occupants, namely, the defendant and the New York, New Haven & Hartford Railroad Company. Even before defendant rested, while its case was going in, plaintiff's counsel declared that he withdraw plaintiff's second cause of action, namely, that under the federal act. At the conclusion of the entire case the defendant renewed its motion to dismiss upon the usual grounds, and the same was denied, defendant excepting. A long colloquy followed between counsel and the learned trial justice over defendant's claim that upon the proof the federal statute alone applied, with the result that the trial justice decided, in effect, that the defendant could not present that claim, because it had not in its answer alleged that the Terminal was engaged in interstate commerce. He therefore granted plaintiff's motion to withdraw her second cause of action and to strike out the evidence of interstate traffic, defendant in each instance excepting, and he denied defendant's motion in that respect to conform the answer to the proofs, defendant also excepting, and submitted the case to the jury under the said state Employers' Liability Act alone, defendant excepting.

[1] The appellant contends here that the trial justice erred in thus holding in various ways that the case was one to be determined by the state and not the federal act, and in so submitting it to the jury. It is manifest that, at least upon the doctrine of assumpion of risk, the test of the federal act might, upon this record, be much more favorable to the defendant than the test of the state act. Moreover, it is clear that a worker, in constructing a railroad station being used for both interstate and intrastate traffic, is engaged in the former, so as to bring his case within the exclusive operation of the federal act. This appears to have been expressly held by the United States Supreme Court in Pedersen v. Del., Lack. & West. R. R., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, of a workman engaged in carrying bolts from a tool car to a bridge, which bolts were there to be used in repairing the bridge of a railroad engaged in both kinds of traffic. I perceive no distinction between such carrier of bolts and the decedent here as a driller of holes in a terminal structure being used alike for both kinds of traffic.

The question here presented, therefore, for this court to determine, is this: Is it necessary for a defendant in such a case to have affirmatively pleaded its engagement in interstate commerce in order to raise the bar of the exclusive application of the federal statute against the maintenance of an action under the state act?

[2] It is plain that counsel and trial justice alike were in error in this case in treating the complaint as alleging two separate causes of action, although such was its form. Payne v. N. Y., S. & W. R. R. Co., 201 N. Y. 436, 95 N. E. 19.

[3] But I suppose that, they having evidently acted upon that theory, we should treat the granting of plaintiff's motion to withdraw her second cause of action as a withdrawal of the allegations in the complaint therein so designated, and treat the case as though those allegations were not in the complaint.

[4] I think that it was not necessary for the defendant to plead the

federal statute, and I understand the respondent's counsel to concede that much. But his contention is that the defendant was bound to plead the fact of its engagement in interstate commerce, and he cites in support of his such contention Bitondo v. New York Central & H. R. R. R. Co. (3d Dept.) 163 App. Div. 823, 149 N. Y. Supp. 339, and Del Mondo v. D., L. & W. R. R. Co. (4th Dept.) 167 App. Div. 959, 152 N. Y. Supp. 1107, wherein the Appellate Division in those departments—the Fourth, however, following the Third—held that such plea is necessary. In Tyndall v. N. Y. C. & H. R. R. R. Co. (3d Dept.) 162 App. Div. 920, 146 N. Y. Supp. 1115, as appears from the report of the case in the Court of Appeals (213 N. Y. 691, 107 N. E. 577), a similar question was presented and came near being decided by the latter court, but was not. In that case, as in this, it appeared upon cross-examination of one of plaintiff's witnesses that the defendant was engaged in interstate commerce, although there was no allegation to that effect in either pleading. After plaintiff rested, defendant moved for a nonsuit upon the ground that the federal statute exclusively applied, but the trial court denied the motion, holding that even so the case made was sufficient to go to the jury, and that the pleadings should be regarded as amended to conform to the proof. At the close of all the case the motion was renewed and denied. The Appellate Division unanimously affirmed. The Court of Appeals held that the unanimous affirmance prevented it from reviewing the question, as, if a finding that defendant was engaged exclusively in intrastate commerce was necessary to sustain the verdict, it was bound to presume such finding. Its per curiam opinion contains, however, a caveat that, if the question were presented by the record, that court might not sustain the claim of error made. The Appellate Division in the Fourth Department recently, in Rodgers v. New York Central & H. R. R. R. Co., 171 App. Div. 385, at page 387, 157 N. Y. Supp. 83, reiterated its above-stated view.

It would seem, from the briefs, that the above decisions present the condition of authority in this state by the decisions of its courts. It seems to me, however, that the precise question here being considered has been decided in the negative, contrary to the decision in the above-cited cases from the Third and Fourth departments, by the United States Supreme Court in Toledo, St. L. & West. R. R. Co. v. Slavin, 236 U. S. 454, 35 Sup. Ct. 306, 59 L. Ed. 671. In that case the pleadings contained no reference to the federal act, or, as I read the report, to the defendant's engagement in interstate commerce, but over plaintiff's objection evidence was received that defendant was so engaged. At the end of the case defendant moved for a direction of a verdict upon the ground that the federal statute exclusively applied, and no case under that had been made. The United States Supreme Court held that such objection was properly presented at the trial, and that it should have been upheld by the trial court, and, in effect, that the situation was really that the proof established that the plaintiff had no case under the said statute, because the evidence showed that the case fell within the test of the federal statute. The opinion cited with approval the following excerpt from an earlier case in the same court to the same effect, viz.:

"When the evidence was adduced, it developed that the real case was not controlled by the state statute, but by the federal statute. In short, the case pleaded was not proved, and the case proved was not pleaded. In that situation the defendant interposed the objection, grounded on the federal statute, that the plaintiffs were not entitled to recover on the case proved. We think the objection was interposed in due time, and that the state courts erred in overruling it."

[5] I think that it is our duty to follow the decision of the federal court in thus dealing with a federal question, and that therefore we should hold that the learned trial justice erred in his several rulings above recited, refusing to apply the test of the federal statute.

I recommend, therefore, that the judgment and order be reversed, and a new trial granted; costs to abide the event. All concur.