ANNA CHROSCIEL, as Administratrix, etc., of JOHN CHROSCIEL,
Deceased, Respondent, *v.* NEW YORK CENTRAL AND HUDSON
RIVER RAILROAD COMPANY, Appellant.

Second Department, June 29, 1916.

Railroads — negligence — injury to employee engaged in interstate com-
merce — pleading — failure of defendant to plead Federal Employers'
Liability Act or engagement in interstate commerce — sufficiency of
complaint alleging cause of action under both State and Federal
statutes.

An employee engaged in drilling holes in a concrete wall forming part of
a railroad station being used for both interstate and intrastate traffic, is
engaged in the former so as to bring an action for his death within the
exclusive operation of the Federal Employers' Liability Act.

It is not necessary for a defendant in such an action to plead affirmatively
either the Federal Employers' Liability Act or its engagement in inter-
state commerce in order to raise the bar of the exclusive application of
the Federal Employers' Liability Act against the maintenance of an
action under the State Employers' Liability Act.

Although a complaint in form sets forth two causes of action, one under
the State Employers' Liability Act and the other under the Federal
Employers' Liability Act, it may be treated as stating only one cause of
action.

APPEAL by the defendant, New York Central and Hudson
River Railroad Company, from a judgment of the Supreme
Court in favor of the plaintiff, entered in the office of the clerk
of the county of Kings on the 13th day of November, 1915,
upon the verdict of a jury for $10,000, and also from an order
entered in said clerk's office on the 11th day of November, 1915,
denying defendant's motion for a new trial made upon the
minutes.

*Robert A. Kutschbock* [*Alex. S. Lyman* with him on the
brief], for the appellant.

*Otto H. Droege,* for the respondent.

MILLS, J.:

This is an appeal by the defendant from a judgment entered
in Kings county November 13, 1915, in favor of plaintiff for
$11,280.43 upon a verdict in favor of the plaintiff for $10,000,

rendered at the Kings County Trial Term, and from an order made at said term denying defendant's motion for a new trial made upon the minutes. The action was brought by the widow and administratrix of the decedent John Chrosciel to recover damages for his death upon the claim that on December 8, 1913, he was killed through the negligence of the defendant while working in its employment upon the construction of the Grand Central Terminal in the city of New York. The answer put in issue the material allegations of the complaint. The record in the main presents undisputed facts. They are the following:

The defendant was engaged in constructing what is known as the Grand Central Terminal for the joint use of its railroad lines and of the line of the New York, New Haven and Hartford Railroad Company. As a part of such terminal construct tion there was a track connecting the upper level with the lower level, with a concrete wall along the side of it connecting the two levels, and an iron fence upon the top of the wall. The defendant was having that fence taken from the top of the wall, where it had been found to be too near passing trains, and anchored in holes to be drilled five inches deep on the side of the wall at certain marked points. At that place a scaffold had been suspended from the fence so that it stood about three feet below the upper level and nine to ten feet above the lower. It consisted of three planks, each ten inches wide and two inches thick and sixteen feet long, placed upon two cross pieces two by six inches, at or near the ends, and those cross pieces were suspended by ropes from the iron fence above. There was a center cross piece, two by four inches, under the middle of the planks, and the planks were nailed to the three cross pieces, but the center cross piece had no support except such nailing. The scaffold was suspended by the side of the wall and near it. The cross pieces projected about one foot beyond the three planks, except that the middle cross piece so projected about three inches less or about nine inches in all. The decedent was a drill machine runner and, with the witness Quinn as his helper, was, by a foreman, about two P. M., sent to drill the said holes from such scaffold. Quinn reached the scaffold first and said to the foreman that it was too narrow, but the

foreman answered him merely that when they had the holes drilled he would have the carpenters change the scaffold, thus implying, at least, that they should do that drilling with the scaffold as it was.   When the decedent arrived in a few minutes, Quinn and he both remarked to themselves that the scaffold was too narrow, and decedent said that there was room on the slats for another board; and he then went to a pile of lumber nearby, took from it a plank about ten inches wide and brought it to the scaffold, and the two placed it upon the projections of the cross pieces, but it was not long enough to rest upon both end cross pieces, so they rested it upon one of the end cross pieces and upon the middle one only.   When the two men came to the scaffold, it was sufficiently light there for them to see plainly its construction.   The scaffold had been built and hung by the carpenters whose practice it was to attend to such work.   The two men, the decedent and Quinn, had worked together about six months.   The drilling machine was about three feet long, and the driller had to hold it in front of him in operating it.   The two men did not nail or fasten the fourth board, except to rest it as above stated by its own weight.   After they had drilled for a few minutes standing upon the fourth or outer plank, the middle cross piece gave way, the nails drawing out, and the decedent fell with his machine to the lower level, some nine or ten feet, and was killed.

The complaint purported to set forth two causes of action, viz.: (a) One under the State Employers' Liability Act (Labor Law [Consol. Laws, chap. 31; Laws of 1909, chap. 36], art. 14, as amd. by Laws of 1910, chap. 352), with service of proper notice; and (b) one under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143).   The answer denied the material allegations of each such division of the complaint, except the defendant's incorporation and its doing of the terminal construction work, and alleged, as defenses, contributory negligence and assumption of risk.

Upon the cross-examination of plaintiff's witness, the said Quinn, it appeared without objection that the trains running

upon such upper level were engaged in interstate traffic; and when plaintiff rested the defendant moved to dismiss upon the usual ground, and also upon the ground that "the accident arose in interstate commerce, and is governed exclusively by the Federal Employers' Liability Act," and also upon the ground that the decedent assumed the risk. Such motion was denied, defendant excepting.

Upon the defendant's side it was clearly proven that the Grand Central Terminal is engaged in interstate traffic by both its occupants, namely, the defendant and the New York, New Haven and Hartford Railroad Company. Even before defendant rested, while its case was going on, plaintiff's counsel declared that he withdrew plaintiff's second cause of action, namely, that under the Federal act. At the conclusion of the entire case the defendant renewed its motion to dismiss upon the usual grounds, and the same was denied, defendant excepting. A long colloquy followed between counsel and the learned trial justice over defendant's claim that upon the proof the Federal statute alone applied, with the result that the trial justice decided, in effect, that the defendant could not present that claim because it had not in its answer alleged that the terminal was engaged in interstate commerce. He, therefore, granted plaintiff's motion to withdraw her second cause of action and to strike out the evidence of interstate traffic, defendant in each instance excepting; and he denied defendant's motion in that respect to conform the answer to the proofs, defendant also excepting, and submitted the case to the jury under the said State Employers' Liability Act alone, defendant excepting.

The appellant contends here that the trial justice erred in thus holding in various ways that the case was one to be determined by the State and not the Federal act, and in so submitting it to the jury. It is manifest that at least upon the doctrine of assumption of risk the test of the Federal act might, upon this record, be much more favorable to the defendant than the test of the State act. Moreover, it is clear that a worker in constructing a railroad station being used for both interstate and intrastate traffic is engaged in the former so as to bring his case within the exclusive operation of the Federal act. This appears to have been expressly held by the United States

Supreme Court in *Pedersen* v. *Del., Lack. & West. R. R. Co.* (229 U. S. 146), of a workman engaged in carrying bolts from a tool car to a bridge, which bolts were there to be used in repairing the bridge of a railroad engaged in both kinds of traffic.   I perceive no distinction between such carrier of bolts and the decedent here as a driller of holes in a terminal structure being used alike for both kinds of traffic.

The question here presented, therefore, for this court to determine is this: Is it necessary for a defendant in such a case to have affirmatively pleaded its engagement in interstate commerce in order to raise the bar of the exclusive application of the Federal statute against the maintenance of an action under the State act?

It is plain that counsel and trial justice alike were in error in this case in treating the complaint as alleging two separate causes of action, although such was its form. (*Payne* v. *N. Y., S. & W. R. R. Co.*, 201 N. Y. 436.)

But I suppose that, they having evidently acted upon that theory, we should treat the granting of plaintiff's motion to withdraw her second cause of action as a withdrawal of the allegations in the complaint therein so designated, and treat the case as though those allegations were not in the complaint.

I think that it was not necessary for the defendant to plead the Federal statute, and I understand the respondent's counsel to concede that much.   But his contention is that the defendant was bound to plead the fact of its engagement in interstate commerce, and he cites in support of his such contention *Bitondo* v. *New York Central & H. R. R. R. Co.* (163 App. Div. 823) and *Del Mondo* v. *D., L. & W. R. R. Co.* (167 id. 959), wherein the Appellate Division in those departments, the Fourth Department, however, following the Third Department, held that such plea is necessary.   In *Tyndall* v. *N. Y. C. & H. R. R. R. Co.* (162 App. Div. 920), as appears from the report of the case in the Court of Appeals (213 N. Y. 691), a similar question was presented and came near being decided by the latter court, but was not.   In that case, as in this, it appeared upon cross-examination of one of plaintiff's witnesses that the defendant was engaged in interstate commerce, although there was no allegation to that effect in either pleading.   After plaintiff

rested defendant moved for a nonsuit upon the ground that the Federal statute exclusively applied, but the trial court denied the motion, holding that even so, the case made was sufficient to go to the jury, and that the pleadings should be regarded as amended to conform to the proof. At the close of all the case the motion was renewed and denied. The Appellate Division unanimously affirmed. The Court of Appeals held that the unanimous affirmance prevented it from reviewing the question, as, if a finding that defendant was engaged exclusively in intrastate commerce was necessary to sustain the verdict, it was bound to presume such finding. Its *per curiam* opinion contains, however, a *caveat* that if the question were presented by the record, that court might not sustain the claim of error made.

The Appellate Division in the Fourth Department recently, in *Rodgers* v. *New York Central & H. R. R. R. Co.* (171 App. Div. 385, 387), reiterated its above-stated view.

It would seem, from the briefs, that the above decisions present the condition of authority in this State by the decisions of its courts. It seems to me, however, that the precise question here being considered has been decided in the negative contrary to the decision in the above-cited cases from the Third and Fourth Departments by the United States Supreme Court in *Toledo, St. L. & West. R. R. Co.* v. *Slavin* (236 U. S. 454). In that case the pleadings contained no reference to the Federal act or, as I read the report, to the defendant's engagement in interstate commerce, but over plaintiff's objection evidence was received that defendant was so engaged. At the end of the case defendant moved for a direction of a verdict upon the ground that the Federal statute exclusively applied, and no case under that had been made. The United States Supreme Court held that such objection was properly presented at the trial, and that it should have been upheld by the trial court, and, in effect, that the situation was really that the proof established that the plaintiff had no case under the said statute, because the evidence showed that the case fell within the test of the Federal statute. The opinion cited with approval the following excerpt from an earlier case in the same court to the same effect, viz.: "When the evidence was adduced

it developed that the real case was not controlled by the State statute, but by the Federal statute. In short, the case pleaded was not proved and the case proved was not pleaded. In that situation the defendant interposed the objection, grounded on the Federal statute, that the plaintiffs were not entitled to recover on the case proved. We think the objection was interposed in due time and that the State courts erred in overruling it."

I think that it is our duty to follow the decision of the Federal court in thus dealing with a Federal question, and that, therefore, we should hold that the learned trial justice erred in his several rulings above recited refusing to apply the test of the Federal statute.

I recommend, therefore, that the judgment and order be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., THOMAS, CARR and RICH, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.