### 8218.  MACON, DUBLIN AND SAVANNAH RAILROAD COMPANY *v.* ROBINSON.

1. Where a switchman in the performance of his duty in connection with a switch-engine used in making up trains in interstate and intrastate transportation by the railroad company by which he was employed was run over by the engine when it was on its way to a water-tank to get water for steam in order to continue the work of making up both interstate and intrastate trains, the Federal "employer's liability act" was applicable.

2. It is not ground for a new trial that the court admitted in evidence the rule or order of the interstate-commerce commission, prescribing the manner of fastening sill-steps of locomotives used in switching.

3. The trial judge did not abuse his discretion in refusing to grant a new trial because of newly discovered evidence. The evidence alleged to have been discovered since the trial,—namely, an order of the interstate-commerce commission, extending the time within which carriers might comply with the standards prescribed in the order of the commission introduced by the plaintiff,—was dated four years before the time of the trial, and the movant—a carrier bound by orders of the commission—should have known of its existence before the trial.

4, 5. It appearing that there was merely a decrease, and not a total loss, of earning capacity of the plaintiff in consequence of the injuries complained of, the court erred in giving in charge to the jury a rule of damages applicable to total loss of earning capacity, and in not properly instructing them as to the rule applicable where there is merely a

partial decrease of such capacity. This error was not cured by writing off a part of the amount of damages awarded by the verdict.

DECIDED FEBRUARY 16, 1917.

Action for damages; from Laurens superior court—Judge Kent. September 11, 1915.

*Minter Wimberly, John S. Adams, Charles Akerman,* for plaintiff in error, cited: On the contention that the plaintiff was not employed in interstate-commerce at the time of the injury: Illinois Central R. Co. *v.* Behrens, 233 U. S. 473 (34 Sup. Ct. 646, 58 L. ed. 1051, Ann. Cas. 1914C, 163). On assumption of risk: Seaboard Air-Line Ry. *v.* Horton, 233 U. S. 492 (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475). As to writing off part of damages from verdict: *Central Ry. Co.* v. *Perkerson,* 112 *Ga.* 923 (4), 930 (38 S. E. 365, 53 L. R. A. 210); *Seaboard Air-Line Ry.* v. *Randolph,* 129 *Ga.* 796, 798 (59 S. E. 1110); *S., F. & W. Ry. Co.* v. *Harper,* 70 *Ga.* 119.

*Robert L. Berner, R. Earl Camp, Little, Powell, Smith & Goldstein,* contra, cited: Delk *v.* St. Louis & San Francisco R. Co., 220 U. S. 580 (31 Sup. Ct. 617, 55 L. ed. 590); Pedersen *v.* Delaware &c. R. Co., 229 U. S. 146 (33 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153); Armbuster *v.* Chicago &c. R. Co., 166 Iowa, 155 (147 N. W. 337); Eng *v.* Southern Pacific Co., 210 Fed. 92; Cousins *v.* Ill. Central R. Co., 126 Minn. 172 (148 N. W. 58); note in L. R. A. 1915C, 60.

LUKE, J. Lucius Robinson, an employee of the Macon, Dublin & Savannah Railroad Company, brought suit under the Federal "employer's liability act," alleging that while engaged as a switchman he received an injury resulting in the loss of both legs, and that the injury was occasioned by the negligence of the company. The acts of negligence were fully pleaded. The defendant agreed in open court that "the Macon, Dublin & Savannah Railroad Company, at the time that Lucius Robinson was injured, was engaged in interstate commerce. That does not mean that this particular engine upon which it is alleged he was injured was at that time engaged in interstate commerce; but that shipments were made to and received from points out of the State of Georgia prior to the accident, at the time of the accident, and since the accident." The trial resulted in a verdict for the plaintiff in the sum of $7,500. The defendant's motion for a new trial was overruled, and to this judgment it excepted.

1. In the motion for a new trial it is alleged that the verdict is contrary to law and without evidence to support it, "because plaintiff pleaded that he and defendant were engaged in interstate commerce at the time he was hurt, and the evidence shows that plaintiff was hurt on a switch-engine moving in the yards of the defendant and not engaged in interstate commerce." In another ground of the motion the defendant assigns error because the court charged the jury that "the plaintiff can recover in this case even if you find from the evidence that he was guilty of contributory negligence and was more at fault than the defendant company, provided you find from the evidence that the defendant company was also negligent in one or more ways defined in the plaintiff's petition;" the movant alleging that this charge was not applicable to the evidence, and that it assumed that the defendant was engaged in interstate commerce, whereas the evidence shows that the plaintiff was hurt while on an engine between two points in the same city and not carrying interstate traffic. The defendant admitted that it was a carrier engaged in interstate commerce at the time of the plaintiff's injury, and the defendant's engineer in charge of the engine testified that the switch-engine on which the plaintiff was working and by which he was injured had been engaged in switching cars and making up trains that were composed of foreign cars and interstate shipments, just before the injury; that at the moment of the injury the engine and crew were on the way to the water-tank to get water; that this water was necessary to create steam and power to run the engine with, and that it was necessary to have this water so as to be able to return to the work of switching both intrastate and interstate shipments, etc.

Ordinarily, in a suit by an injured employee against a railroad company, where he contends that his employer and himself were engaged in interstate commerce at the time of his injury, and the employer denies that they were engaged in interstate commerce, there being an issue of fact upon the question, upon which the jury would be authorized to find either way, according as they might credit the witness testifying, the court should leave that question to the jury; but where the facts are such that they of themselves, under the rulings of the courts in the construction and application of the Federal "employer's liability act," remove the issue,

the simple denial by the employer will not require the court to submit this issue to the jury. In the case of Pedersen *v.* Delaware &c. Co., 229 U. S. 146, 151 (53 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153), Mr. Justice Van Devanter, delivering the opinion for the court, said: "That the defendant was engaged in interstate commerce is conceded; and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depend in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment,' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements, and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? [Citing many cases.] Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such. True, a track

or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce." See also Louisville & Nashville R. Co. *v.* Parker, 242 U. S. 13 (37 Sup. Ct. 4, 61 L. ed.) The getting of water by the engine was necessary to the use of the engine for the purpose of handling the interstate traffic of this defendant. The court did not err in holding that the case was governed by the Federal "employer's liability act;" and consequently there is no merit in the above-quoted grounds of the motion for a new trial.

2. The exceptions to the ruling of the court in admitting in evidence the rule or order of the interstate-commerce commission, prescribing the manner of fastening sill-steps of locomotives used in switching, are without merit. From the plaintiff's allegations and evidence it appeared that the sill-step of the switch-engine, on which he was standing when he fell and received the injuries complained of, was not securely fastened, and turned, causing him to fall, and it was alleged that the railroad company was negligent in allowing the step to be in this condition, and in not having the engine equipped with a secure sill-step. In the motion for a new trial it is stated that the order referred to was not read to the jury or sent out with them.

3. In ground 30 of the amendment to the motion a new trial is sought upon the averment that "Since the rendition of said verdict, certain material evidence, not merely cumulative in its character, but relating to new material facts, has been discovered by this applicant, said evidence being in substance as follows: An order of the interstate-commerce commission, dated at Washington, D. C., March 31, 1911, extending the time within which carriers might comply with the standards prescribed in the order of the said commission introduced by the plaintiff." The plaintiff was injured on October 23, 1911. The case was tried and judgment was rendered on July 31, 1915. This court can not say that the defendant has shown ordinary diligence in discovering the order which it says is new to it. The rulings of the interstate-commerce commission are binding on the defendant, and a failure to know of a ruling which the defendant, in its motion for a new

trial, says was made nearly four years before the time of the trial, can not become a meritorious ground for a new trial upon the averment that the evidence is new.

4. The court having given in charge an incorrect measure of damages, as is complained of in grounds 16, 17, and 18 of the motion for a new trial, a new trial should have been granted. The evidence entitled the plaintiff to recover only, if at all, for the injury, pain, suffering, and decrease of earning capacity. Under the charge given, the jury would have been authorized to find an amount in favor of the plaintiff as if the evidence had shown a total loss of earning capacity. The court did not properly instruct as to the use of the mortality and annuity tables where there is proof of only decreased earning capacity.

5. On the day of hearing the motion for a new trial the plaintiff filed, in open court, the following motion: "Now comes the plaintiff in the above-stated case, and in view of the contention of the movant, that the charge of the court on the tables adduced by the plaintiff (mortality and annuity tables) was calculated to impress the jury with the idea that the plaintiff was entitled to recover for the total loss of earning capacity instead of for the loss of his diminished earnings, offers to and does write off of the verdict and judgment in said case the sum of $1,210.14, the same being the amount of the value of his earning capacity which survived his injury, under the evidence of the plaintiff, who testified alone on that subject, and who testified on that point that he averaged only two days' work in a week and made, he supposed, 75 cents a day, and not over $1 a day. The above amount is reached on the basis of $1 per day." The court, upon that motion, entered the following order: "This action allowed and the verdict and judgment reduced in the above-stated amount. September 11, 1915." The court, after hearing the motion for a new trial, entered the following order: "The plaintiff, through his counsel, having in open court written off from the verdict the sum of $1,210.14, the new trial is refused." The error in the charge of the court can not be cured by the plaintiff writing off a part of the verdict in this case. There is no way to compute accurately in money the harmful effect of the charge. The jury were instructed that they may or may not use the tables referred to in the charge. The jury may or may not have used the tables. Neither the trial court nor

this court can accurately compute separately the damages that the jury allowed for the injury, pain, suffering, and total loss of earning capacity.

The other assignments of error in the motion for a new trial are without merit. For the reasons, given the court erred in overruling the motion for new trial.

*Judgment reversed. Wade, C. J., and George, J., concur.*