# Louisville & Nashville Railroad Company v. Netherton.

(Decided April 19, 1917.)

Appeal from Oldham Circuit Court.

1.  Master and Servant—Employers' Liability Act—When Employe is Engaged in Interstate Commerce.—An employe of an interstate railway, while engaged in painting a bridge used for interstate traffic, for the purpose of preserving the bridge and keeping it in proper repair, was employed in interstate commerce, and his cause of action for an injury received while so engaged is governed by the Employers' Liability Act.

2.  Master and Servant—Unsafe Appliances for Work—Sufficiency of Evidence.—In an action for damages for personal injuries, alleged to have been caused by the breaking of a rope supporting a scaffold on which plaintiff was standing while painting a bridge, evidence that the rope broke examined, and held insufficient to make a question for the jury.

BENJAMIN D. WARFIELD, DAVID H. FRENCH and CHARLES CARROLL for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, William C. Netherton, brought this suit under the Federal Employers' Liability Act against the Louisville & Nashville Railroad Company to recover damages for personal injuries. The trial before a jury resulted in a verdict and judgment in his favor for $7,000.00. The railroad company appeals.

When injured plaintiff was twenty-four years of age and had been in the company's employ for about three years. For the greater portion of that time he was engaged with others in painting bridges, depot buildings, etc. At the time of his injury he was painting a bridge across Licking River. With the exception of the cross-ties, which were of wood, the bridge was constructed of steel. It was about 18 feet wide and 30 feet high. The painting crew consisted of the foreman, John Florence, and six or seven others, including plaintiff. Plaintiff and an employe, by the name of Kindle, were on the platform of a scaffold suspended from the top of the bridge. The platform or stage was about 5 feet below the girder and 25 feet from the floor of the

bridge. It was about 18 inches wide and 16 feet long. Through holes bored in each end ropes were tied, so that the stage could be adjusted to the proper position for use. At the top the ropes were looped around a steel girder 18 inches square. After being looped around the girder the loop ropes were attached to the rope which was hooked to the stage by another rope through the loop rope. Two hooks, one at each end, were attached to a rope so doubled as to work through a pulley, one hook being attached to the stage and the other to the loop rope at the girder. This condition existed at each end of the stage. By pulling on the ropes attached to the hooks and pulley the stage was raised from the bridge floor to the point desired, and then fastened by means of a loop made with the drop rope. As the work progressed the scaffold was moved along the bridge. To this end it was necessary only to move one of the loops at a time. Plaintiff and Kindle were working towards the Covington side. Plaintiff climbed to the girder and removed the rope and loop from the Latonia side over to the proper place towards the Covington side. While he was thus engaged, Kindle and the foreman, Florence, moved the stage over and adjusted the hooks to same. They then pulled the stage to the proper position about 5 feet below the girder and held it until plaintiff came down from the girder to the stage and fastened the drop line to the hooks in the customary way. Kindle then climbed on the stage with plaintiff and they began to paint. In thirty or forty minutes the scaffold fell and plaintiff and Kindle were precipitated to the floor of the bridge. Plaintiff testified that the stage and attachments were all properly adjusted and safely put together. Kindle also says that the loops were made in the usual and customary way. While getting ready to step across the brace, plaintiff says he "heard the ropes crack and the stage fell down." He further says that it fell only at one end and went down suddenly. On cross-examination plaintiff was asked the question: "You heard the crash like breaking ropes?" and answered: "Yes, sir." Plaintiff also testified that his statement that he heard the ropes crack had reference to the loop ropes. It further appears from his evidence that about two weeks prior to the accident new ropes were secured for use on the bridge, but they proved too short and the workmen got old ropes that

had been in use for about two years.  During plaintiff's cross-examination two loop ropes which had not been broken were introduced in evidence, and he was asked if they were not the ropes he was using at the time of the accident.  He admitted that the ropes were similar in appearance, length and general construction to those used by him, but would not say whether they were the same ropes or not.  He added, however, that he did not think they were the same, because the ropes he used had more paint on them.  W. J. Manby, after explaining the use and operation of the stage on which plaintiff was at work, testified that he thought at the time of the accident one of the loops was on the ties.  He further stated that he did not think that if the loops were properly adjusted they would come off the end of the girder without breaking or coming untied.  M. L. Wasson testified that the old loops and not the new loops were being used at the time of the accident.  Oscar Kindle testified that plaintiff himself adjusted the loops at the time the stage was moved.  Then he and Mr. Florence, the foreman, hooked the loop to the stage and pulled the stage up.  The loops they were using were good strong loops. He identified the unbroken loop ropes introduced in evidence as the ropes that were being used at the time. While all the loop ropes were similar in appearance, he was able to identify the ropes offered in evidence as the ones that were used because he had noticed the way they were wrapped on the end.

1.  It is not seriously contended that the case is not controlled by the Federal Employers' Liability Act. The evidence shows that the bridge on which plaintiff was at work is a part of the company's main line connecting the city of Louisville, Kentucky with the city of Cincinnati, Ohio, and was used for purposes of interstate traffic.  It further appears that plaintiff, at the time of the accident, was engaged in painting the bridge and that this work was necessary to preserve the bridge and keep it in proper repair.  In view of these facts, we conclude that, at the time of the accident, the defendant was engaged, and plaintiff was employed, in interstate commerce.  Pederson v. Delaware, L. & W. R. Co., 229 U. S. 146, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914 C 153, 3 N. C. C. A. 779.

2.  The principal ground urged for reversal is that the evidence of negligence on the part of the company

was insufficient to take the case to the jury. Plaintiff asked a recovery on two grounds: (1) The gross negligence of the foreman in adjusting the ropes, pulleys, etc.; (2) the failure of the company to furnish him reasonably safe appliances for work. It is conceded that the evidence did not warrant the submission of the foreman's negligence to the jury. It remains to determine whether the evidence relating to the second ground of negligence was sufficient to take the case to the jury. Plaintiff insists that, under the doctrine of *res ipsa loquitur,* the mere breaking of the rope, in the absence of explanation by the defendant, furnished sufficient evidence of negligence. Whether, in view of the fact that the scaffold was not under the sole control of the defendant, or its agents other than plaintiff, but had been adjusted and was being used by the plaintiff himself, the doctrine of *res ipsa loquitur* is applicable at all to the facts of this case, and whether or not, if applicable, proof of the breaking of the rope would be sufficient evidence of negligence when considered in the light of the restricted sense in which the rule is applied as between master and servant, we deem it unnecessary to decide. As a matter of fact, the evidence utterly fails to show that the rope did break. True, there was proof to the effect that the loops were properly adjusted; that the loop of one of them was found on the ties, and that it would not have come off the girder unless it had broken or come untied. There was also the testimony of plaintiff that he heard the ropes crack, or a crash like breaking ropes. It is a matter of common knowledge that when ropes supporting a weight slip or come untied, or are subjected to a strain, they will give forth a cracking sound, and the mere fact that such a sound was heard is no evidence whatever of the fact that the ropes broke. Nor is the case strengthened by the evidence that the loops were properly adjusted and one of them was found on the ties. The same condition might have existed if the loops had come untied and, at most, the contention that one of the ropes broke is mere speculation, based on a theory as to how the accident might have happened, rather than on facts from which the inference that the loop broke would naturally follow. Not only so, but Kindle, a witness for plaintiff, identified the two ropes introduced in evidence as the ones that were being used on the occasion of the accident, and neither of these

ropes had been broken. As plaintiff based his whole case on the fact that one of the ropes broke and he utterly failed to establish this fact, it follows that defendant's motion for a peremptory instruction should have been sustained.

In view of the foregoing conclusion, we deem it unnecessary to consider any of the other grounds urged for reversal.

Judgment reversed and cause remanded for a new trial consistent with this opinion.