### DEAL v. COAL & COKE RY. CO.

(District Court, N. D. West Virginia. July 2, 1914.)

COMMERCE (§ 27*)—REGULATION—RAILROADS—STATUTORY PROVISIONS.

An employé of an interstate railroad company, who was engaged in repairing a telegraph line owned and maintained by it and used in directing the operations of interstate trains, was entitled to the benefits of the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

At Law. Action by David F. Deal against the Coal & Coke Railway Company. On demurrer to the declaration. Demurrer overruled.

Harold W. Houston, of Charleston, W. Va., for plaintiff.
Price, Smith, Spilman & Clay, of Charleston, W. Va., for defendant.

DAYTON, District Judge. This demurrer presents a very interesting question of jurisdiction. The plaintiff alleges substantially that the railroad company is engaged in interstate commerce transportation; that incident to and as a necessary adjunct and part of its interstate transportation it owns and maintains a line of telegraph, using it for the purpose of directing the operations of its trains; that he was employed by the company to aid in repairing this telegraph line, and was injured while engaged in doing so. The defendant insists that these facts do not allow the defendant the benefit of the federal Employers' Liability Act, and, no other ground for federal jurisdiction being alleged, the demurrer must be sustained.

I confess that I cannot see where the dividing line is to be drawn between employés of interstate commerce carriers protected by this act and those who are not. That must be determined largely by future decisions in specific instances. The Supreme Court, in Pederson v. Delaware, L. & W. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, has certainly held that an iron worker engaged in carrying bolts to repair a bridge upon an interstate carrier's roadbed is entitled to the benefit of the Act. It says:

"That the work of keeping such instrumentalities in a proper state of repair while thus used [in interstate transportation] is so closely related to such commerce as to be in practice and in legal contemplation a part of it."

I am able to see little difference between the necessity for the proper repair of the bridge over which the interstate commerce passes and the necessity of repairing the telegraph line owned by the company and by the operation of which the movement of such commerce over the bridge is controlled and directed. The line of distinction may be eventually drawn at this point, but I am not willing to draw it.

The demurrer will be overruled.