WILLIAM REED, Appellant, v. JACOB M. DICKINSON et al., Appellees.

CARRIERS: Employee Engaged in Interstate Commerce. An employee who is engaged, on the track of an interstate carrier, in unloading steel rails from flat cars, preparatory to the placing of said rails in said track in lieu of worn-out rails, is engaged in interstate commerce.

**MASTER AND SERVANT:** Federal Employers' Liability Act—Negligence. Plaintiff's negligence, in an action for injury under the Federal Employers' Liability Act, is no ground for a directed verdict against plaintiff, unless the record is such that the court may say, as a matter of law, that plaintiff's negligence was the *exclusive* cause of the injury. Evidence held insufficient to justify such holding.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

DECEMBER 14, 1918.

ACTION brought under the Federal Employers' Liability Act, to recover damages for personal injury. Opinion states the facts. Judgment was rendered for the defendant in the court below, on a directed verdict. Plaintiff appeals.—*Reversed.*

*Thomas O. Harrison* and *H. L. Robertson,* for appellant.

*F. M. Sargent, J. G. Gamble,* and *Saunders & Stuart,* for appellees.

GAYNOR, J.—I. This action is under the Federal Employers' Liability Act, and is brought to recover damages claimed to have been sustained through the negligence of the defendant, while engaged in interstate commerce. The action is against the Chicago, Rock Island & Pacific Railway Company and its receivers.

The company answers, and denies generally and specifically every statement, allegation, matter, and thing alleged which, if true, might involve the defendant in liability, and alleges especially that it was not engaged in the operation of, nor did it have possession of, the railway property mentioned in the petition, at the time referred to; that the railway was solely and exclusively in the possession of and operated by the receivers mentioned, under appointment by the Federal court.

The receivers, answering, deny both generally and specifically every allegation of plaintiff's petition, and further answer by saying that the plaintiff assumed the risk incident to the work in which he was engaged at the time, and on account whereof he claims to have received the injuries, and further say that the plaintiff was guilty of contributory negligence, directly contributing to and causing the injuries of which he complains.

That the plaintiff received injury while in the employ of the defendants is not a controverted question here, nor is the extent of his injuries, for the reason that, at the conclusion of plaintiff's testimony, the court directed a verdict in favor of both defendants, and upon such verdict, entered judgment, dismissing plaintiff's petition.

The case, therefore, as presented here, involves but two questions:

(1) Was the plaintiff, at the time he received his injuries, engaged in interstate commerce, so as to be within the rule of the Federal Employers' Liability Act?

(2) Was the injury exclusively due to the act of the plaintiff himself,—that is, due to his own exclusive negligence; or was it due to some negligent act of the defendants, or either of them, which contributed to the injury, for which they, or some of them, ought to be called upon to respond in damages under the Federal Employers' Liability Act?

On the first question, it appears that the plaintiff was working on the main line of the Chicago, Rock Island & Pacific Railway Company, just east of Council Bluffs; that this line runs from Chicago, Illinois, to Omaha, Nebraska; and that passenger and freight trains pass over the track between these points. Just prior to the time of the injury, steel rails were being hauled over the main line, on flat cars, for distribution

1. CARRIERS: employee engaged in interstate commerce.

along the line, to be placed, when distributed, in the track, in substitution for old rails that were being removed. At the time plaintiff was injured, he was helping remove these steel rails from the flat car. The rails so unloaded were being used in the repair of the track, upon the main line of the company's road.

Under all the decisions, both plaintiff and defendants were engaged in interstate commerce. The Federal Employers' Liability Act, as bearing upon this case, provides (Federal Employers' Liability Act of April 22, 1908, Chapter 149, Section 1, 35 U. S. Statutes at Large 65, U. S. Comp. Statutes, 1916, Section 8657) :

"That every common carrier by railroad while engaging in commerce between any of the several states or territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of its officers, agents or employees."

This first point was directly decided by this court in plaintiff's favor in *Eley v. Chicago G. W. R. Co.,* decided May 21, 1919; *Ross v. Sheldon,* 176 Iowa 618; and *Brier v. Chicago, R. I. & P. R. Co.,* 183 Iowa 1212.

In *Deal v. Coal & Coke R. Co.,* 215 Fed. 285, the plaintiff was engaged in repairing telegraph lines owned by the railway company, and used in directing the movement of its trains. It was held that the injured party was engaged in interstate commerce, and his rights were governed by the Federal Employers' Liability Act.

It has been said that the true test as to whether the employment is within the Federal Employers' Liability Act is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it? *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556 (60 L. Ed. 436).

The record shows that defendants were carrying these steel rails on flat cars, for distribution along the right of way, and, when distributed, used in repairing its tracks. The plaintiff, under defendants' foreman, was engaged in removing the rails from the cars. The work, therefore, was so closely related to interstate transportation as to be practically a part of it. See *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146 (57 L. Ed. 1125). In this case, the injured party was an iron worker, employed by the defendant in the alteration and repair of bridges, under the direction of a foreman. A bridge was being repaired. The plaintiff was carrying some bolts or rivets from a tool car, to be used that night, or very early the next morning, in repairing the bridge. He was on his way to the bridge, carrying with him these bolts, etc., to be used in making the repairs. He was run down and injured, while so doing. It was held that his employment was within the purview of the Federal Employers' Liability Act, and he was permitted to recover.

So we say that the plaintiff showed a right of action under the Federal Employers' Liability Act, and the court erred in dismissing his petition on that ground.

II.   It is next contended that the injury which he sustained was exclusively due to his own negligence,—to his own want of care,—and not due to, or contributed to, by any negligence of the defendant; and that.

2. MASTER AND SERVANT: Federal Employers' Liability Act: negligence.   therefore, even conceding that his action is properly brought under the Federal Employers' Liability Act, he has not shown a right to recover.

Upon this question, the record is not as clear as it might be; but we gather from the record this state of facts: He was injured on the 27th day of August, 1915. On this day, he was employed as a common laborer, to work with a construction gang in the repair and maintenance of

the defendants' tracks and roadbed. While so employed, it was his duty, under the direction of a foreman, to remove from the flat cars, with the assistance of other employees, certain steel rails, which were then to be used in replacing the old and defective rails. These steel rails were heavy. They were piled upon flat cars. It was the duty of the defendant, with the assistance of another, to loosen them, so that they could be more easily removed from the car. To remove a rail required at least two of defendants' employees. Plaintiff was selected as one. He and his co-employees were furnished with pinch bars, and instructed to place the bars under the ends of the rails, or in bolt holes in the rails, and to turn them, or loosen them from the pile, so that they could be removed from the car. Plaintiff, in the discharge of this duty, placed his pinch bar in a bolt hole in one of the rails, for the purpose of loosening it from the pile, and at the time of the accident, had accomplished this purpose. Another of defendants' employees was at the other end of the same rail, and was charged with and engaged in like work. At the time of the injury, plaintiff had succeeded in moving his end of the rail from its fastening. The employee at the other end of the rail had not succeeded in loosening his end. After plaintiff had loosened his end, he was standing with his bar in a bolt hole in the rail, and was pressing somewhat upon his bar. The foreman had instructed both plaintiff and his assistant that, whenever they got the rail ready to loosen up, or, as they say, "ready to go," to warn each other of the fact, by saying, "Look out." While plaintiff was so standing, with his bar in the bolt hole, pressing upon the bar,—the extent of which pressure does not appear,—his assistant, without warning, and without giving the signal that he was instructed to give, suddenly jerked his rail loose, causing plaintiff's bar to strike him in the head, knocking him from the car, and injuring him.

The plaintiff testifies:

"I had my lining bar in the bolt hole, trying to help the man at the other end to get his end loose. I had my end free. It was loose. I supposed he would let me know when he got his bar down in where he could get hold, and I was there, waiting for him to get in, and was still holding, to help get his bar fastened. When he got his bar in, he said nothing. He gave his bar a big, heavy wrench, and knocked me headfirst off the car. I was doing my work, at the time I was hurt, in the usual and ordinary way of doing that work."

It is apparent that plaintiff was injured while in the line of his employment, and while engaged in the very act which he was directed by defendants' foreman to do. Taking this record as it is before us, the jury might well find that the plaintiff had done the work assigned him in the usual and ordinary way. He had succeeded in loosening his end of the rail, and, while standing with his bar in the bolt hole, awaiting the action of his co-employee at the other end of the rail, the rail was suddenly turned, with plaintiff's bar in the bolt hole, and the position of the bar changed, by the act of turning. This threw it out of position, and injury resulted to the plaintiff. Plaintiff was waiting for the employee at the other end to signal him that he had secured a bar hold on the rail, sufficiently strong to enable him to turn the rail free from its position and loosen it from the pile. The record shows that his co-employee, without giving the warning which the plaintiff had reason to expect, and which the employee was directed to give, and upon which plaintiff relied, suddenly jerked the rail loose, causing plaintiff's bar to strike him upon the head.

The jury could well have found that the cause of the injury was the sudden and unexpected movement of plaintiff's assistant, in suddenly jerking the rail loose without

warning plaintiff that he was about to do so, and without warning plaintiff that the rail was in a position to be jerked at that end. It was said in *Caverhill v. Boston & M. R. Co.*, 77 N. H. 330 (91 Atl. 917), that, whatever risks the deceased assumed as to the defendants' method of doing business, he did not assume the risk of injury from the negligence of another servant. For an injury so caused, the statute expressly makes the employer liable.

It was said by this court, in *Byram v. Illinois Cent. R. Co.*, 172 Iowa 631:

"It is clear that the plaintiff did not assume the risk arising out of the negligence of another employee; for this he could not anticipate or guard against."

The defendants pleaded contributory negligence. This cannot avail them at this time, for it is not a defense under the Federal Employers' Liability Act. In any event, it can only serve to diminish the damages, if any, allowed to the plaintiff.

On both grounds, we think the court erred in directing a verdict for the defendants, and for that reason the case is—*Reversed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.