# PEDERSEN *v.* DELAWARE, LACKAWANNA & WESTERN RAILROAD COMPANY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

. No. 698. Argued January 14, 1913.—Decided May 26, 1913.

Under the Employers' Liability Act a right of recovery exists only where the injury is suffered while the carrier is engaged in interstate commerce and while the employé is employed in such commerce; but it is not essential that the co-employé causing the injury be also employed in such commerce.

One engaged in the work of maintaining tracks, bridges, engines or cars in proper condition after they have become and during their use as instrumentalities of interstate commerce, is engaged in interstate commerce, and this even if those instrumentalities are used in both interstate and intrastate commerce.

One carrying materials to be used in repairing an instrumentality of interstate commerce is engaged in such commerce; and so *held,* that a railroad employé carrying bolts to be used in repairing an interstate railroad and who was injured by an interstate train is entitled to sue under the Employers' Liability Act of 1908.

A Federal court is without authority to reverse a judgment in favor of one party and direct a judgment in favor of the other *non obstante veredicto.* *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364.

197 Fed. Rep. 537, reversed.

THE facts, which involve the construction of the Employers' Liability Act of 1908 and the determination of what constitutes being engaged in interstate commerce, are stated in the opinion.

*Mr. Benjamin Patterson,* with whom *Mr. George Bell* was on the brief, for plaintiff in error.

*Mr. James F. Campbell,* with whom *Mr. William S. Jenney* was on the brief, for defendant in error:·

An attempt is made in this case to stretch to the utmost limit the scope of the Federal Employers' Liability Act as to what employés of a railroad company are entitled to its benefits.

The injured employé had nothing at all to do with transportation, but was merely a helper in and about the building of new bridges or the repair of old ones; he had nothing to do with the operation of trains, the repair or maintenance of track or cars or anything in connection with intercourse between the States.

If this employé comes within the terms of the act then practically every other employé of a railroad does, no matter how remote their services may be in connection with interstate commerce.

One of the chief objections to the act of 1906, which was declared unconstitutional in the *Employers' Liability Cases*, 207 U. S. 463, 498, was that it included employés who were not actually employed in interstate commerce.

There was nothing real or substantial in plaintiff in error's employment in connection with interstate commerce that would include him within the terms of the act. He had nothing whatever to do with operation of trains; nor with anything in connection with intercourse or traffic; nor with tracks, roadbed or the other instrumentalities of commerce. He was a laborer in and about the construction of a new bridge or carrying supplies that were to be used in the repair or remodeling of an old one. The mere fact that he was using the railroad track as a path to go to or from his work certainly would not make him engaged in commerce, or the fact that his carrying bolts or rivets which were to be used in the construction of a railroad bridge, give him any real or substantial connection with interstate commerce, traffic or intercourse.

Commerce is a term of the largest import, *Welton v. Missouri*, 91 U. S. 275; *P. & R. R. Co. v. Pennsylvania*, 15 Wall.

232; *New York* v. *Miln,* 11 Pet. 102; *Kidd* v. *Pearson,* 128 U. S. 1, 20; Judson on Interstate Commerce, §§ 6, 7; 7 Cyc. 413; but giving the words their proper construction means that the employé must be engaged in commerce; that is, traffic or intercourse between the States, and that an employé not engaged in transportation, traffic or intercourse between the States is not engaged in such commerce. Congress has power under the commerce clause to regulate the instrumentalities of commerce, but if Congress meant to take care of employés not engaged in traffic or commerce, but simply about the instrumentalities of commerce, it would so have said. *Hooper* v. *California,* 155 U. S. 648; *Williams* v. *Fears,* 179 U. S. 270.

The distinction, therefore, is between acts of commerce and subjects of commerce which include anything that may be transported and the instrumentalities thereof. The plaintiff was engaged about some construction work, that is, manufacturing something new, although it is true such creation or result was afterwards to be used as a means whereby interstate commerce was to be carried on. These acts are not such interstate commerce as is contemplated by the statute. *United States* v. *Knight,* 156 U. S. 1; *Int. Com. Comm.* v. *Detroit &c. R. Co.,* 167 U. S. 633; *Penn. R. R.* v. *Knight,* 192 U. S. 21.

If plaintiff in error was engaged in interstate commerce, then the man chopping down trees in the forest in order to make railroad ties is equally employed in interstate commerce, and even the miner working in mines to furnish the railroad with coal, which is to be used on its interstate engines, is so engaged. *Southern Ry. Co.* v. *United States,* 222 U. S. 20, does not apply.

For cases in the Federal courts deciding what employés come under the act, see *Taylor* v. *Southern Ry. Co.,* 178 Fed. Rep. 380; *Johnson* v. *Gt. Nor. Ry. Co.,* 178 Fed. Rep. 643; *Zikos* v. *Oregon Nav. Co.,* 179 Fed. Rep. 893; *Colasurdo* v. *Cent. R. R. of N. J.,* 180 Fed. Rep. 832, aff'd 192

Fed. Rep. 901; *Van Brimmer* v. *Tex. & Pac. Ry. Co.*, 190
Fed. Rep. 394; *Behrens* v. *Ill. Cent. R. R. Co.*, 192 Fed.
Rep. 581; *Lamphere* v. *Oregon Nav. Co.*, 196 Fed. Rep. 336;
*Bennett* v. *Lehigh Valley R. R. Co.*, 197 Fed. Rep. 578;
*Heimbach* v. *Lehigh Valley R. R. Co.*, 197 Fed. Rep. 579;
*Feaster* v. *Phila. & Read. Ry. Co.*, 197 Fed. Rep. 580; *Nor.
Pac. Ry. Co.* v. *Maerkl*, 198 Fed. Rep. 1.

In every one of these cases where a recovery was allowed
under the act, the railroad employé had some direct con-
nection with interstate commerce, either as part of a crew
upon a train engaged in interstate commerce, or about
the tracks and switches which were in active use in con-
ducting interstate commerce, but in the case at bar the
employé was engaged merely in duties tending towards
the manufacturing of something which was afterwards
to be used in interstate commerce and therefore his con-
nection is entirely too remote to be covered by the act.

Mr. Justice Van Devanter delivered the opinion of
the court.

This was an action under the Employers' Liability
Act [1] of April 22, 1908, 35 Stat. 65, c. 149, to recover for
personal injuries sustained by the plaintiff through the
negligence of a co-employé while both were in the de-
fendant's service.   At the trial the Circuit Court refused
to direct a verdict in the defendant's favor, and the jury
returned a verdict for the plaintiff, assessing his damages
at $6,190.   Subsequently the court, following a local
statute (Penn. Laws, 1905, p. 286, c. 198), entered judg-
ment for the defendant notwithstanding the verdict, on
the ground that the latter was not sustained by the evi-
dence.   184 Fed. Rep. 737.   The judgment was affirmed

---

[1] The act and the amendment of April 5, 1910, are printed in full in
223 U. S., p. 6.

by the Circuit Court of Appeals, 197 Fed. Rep. 537, and the plaintiff sued out this writ of error.

The evidence, in that view of it which must be taken here, was to the following effect: The defendant was operating a railroad for the transportation of passengers and freight in interstate and intrastate commerce, and the plaintiff was an iron worker employed by the defendant in the alteration and repair of some of its bridges and tracks at or near Hoboken, New Jersey. On the afternoon of his injury the plaintiff and another employé, acting under the direction of their foreman, were carrying from a tool car to a bridge, known as the Duffield bridge, some bolts or rivets which were to be used by them that night or very early the next morning in "repairing that bridge," the repair to consist in taking out an existing girder and inserting a new one. The bridge could be reached only by passing over an intervening temporary bridge at James Avenue. These bridges were being regularly used in both interstate and intrastate commerce. While the plaintiff was carrying a sack of bolts or rivets over the James Avenue bridge, on his way to the Duffield bridge, he was run down and injured by an intrastate passenger train, of the approach of which its engineer negligently failed to give any warning.

The Circuit Court ruled that an injury resulting from the negligence of a co-employé engaged in intrastate commerce was not within the terms of the Federal act, and the Circuit Court of Appeals, although disapproving that ruling, held that under the evidence it could not be said that the plaintiff was employed in interstate commerce and therefore he was not entitled to recover under the act.

Considering the terms of the statute, there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employé is employed by the carrier in such commerce; but it is not essential,

where the causal negligence is that of a co-employé, that he also be employed in such commerce, for, if the other conditions be present, the statute gives a right of recovery for injury or death resulting from the negligence "of *any* of the . . . employés of such carrier," and this includes an employé engaged in intrastate commerce. *Second Employers' Liability Cases*, 223 U. S. 1, 51.

That the defendant was engaged in interstate commerce is conceded, and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct "any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment" used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can

be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? See *McCall* v. *California*, 136 U. S. 104, 109, 111; *Second Employers' Liability Cases*, *supra*, 6, 59; *Zikos* v. *Oregon R. & Navigation Co.*, 179 Fed. Rep. 893, 897, 898; *Central R. Co. of N. J.* v. *Colasurdo*, 192 Fed. Rep. 901; *Darr* v. *Baltimore & O. R. Co.*, 197 Fed. Rep. 665; *Northern Pacific Ry. Co.* v. *Maerkl*, 198 Fed. Rep. 1. Of course, we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such.

True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce.

The point is made that the plaintiff was not at the time of his injury engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce. See *Lamphere* v. *Oregon*

*R. & Navigation Co.*, 196 Fed. Rep. 336; *Horton* v. *Oregon, &c. Co.*, 130 Pac. Rep. 897; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1, 21.

What has been said shows that there was evidence to sustain a finding that at the time of the plaintiff's injury the defendant was engaged, and he was employed by it, in interstate commerce, and, as in other respects the case was one for the jury, the court rightly denied the defendant's request that a verdict in its favor be directed. A motion for a new trial was interposed by the defendant, but no ruling was had upon it, doubtless because the court concluded that it could and should render judgment for the defendant on the evidence notwithstanding the verdict. In this the court was in error, first, because it was without authority so to do (*Slocum* v. *New York Life Insurance Co.*, 228 U. S. 364), and, second, because the evidence did not warrant such a judgment. Unless the motion for a new trial was well taken, judgment should have been given for the plaintiff on the verdict, and, subject to that qualification, the plaintiff is now entitled to such a judgment.

The judgments of the Circuit Court and the Circuit Court of Appeals are reversed, and the case is remanded for further proceedings in accordance with this opinion.

*Judgment reversed.*


Mr. Justice Lamar with whom concurred Mr. Justice Holmes and Mr. Justice Lurton, dissenting:

I am unable to assent to the proposition that a man carrying bolts to be used by him in repairing a railroad bridge was employed in interstate commerce.

Transportation has been defined as commerce, and those engaged in transportation are employed in commerce. But in building the bridge originally the carrier was not "engaging in commerce between the States," and the plaintiff, in subsequently repairing it, was not

employed in such commerce. Such work was not a part of commerce, but an incident which preceded it.

The act provides that "every common carrier by railroad, while engaging in commerce between any of the States or Territories . . . shall be liable in damages to any person suffering injury while employed by such carrier in such commerce."

The defendant, though engaged in both interstate and intrastate commerce was also engaged in many other incidental activities which were not commerce in any sense.

The railroad had to be surveyed and built, bridges had to be constructed and renewed, cars had to be manufactured and repaired, warehouses had to be built and painted, wages had to be paid and books kept; but these transactions, though incident to it were not transportation, and, therefore, not within the purview of the statute limited to persons employed in commerce. Otherwise the law would embrace "all of the activities in any way connected with trade between the States and exclude state control over matters purely domestic in their nature." *Hooper* v. *California*, 155 U. S. 648, 655. Acts burdening interstate commerce can, of course, be prohibited by Congress. But when Congress itself limits the operation of the statute to persons injured while employed in interstate commerce the statute does not extend to its incidents and is confined to transportation. It does not include manufacturing, building, repairing, for they are not commerce, whether performed by a private person, a railroad, or its agents.

It is conceded that a line must be drawn between those employés of the carrier who are employed in commerce and those engaged in other departments of its business. It must be drawn so as to take in on one side those engaged in transportation, which is commerce, otherwise there is no logical reason why it should not include every

agent of the company; for there is no other test by which to determine when he must sue under the state statute and when under the act of Congress; for if a man on his way to repair a bridge is engaged in interstate commerce, then the man in the shop who made the bolts to be used in repairing the bridge is likewise so engaged. If they are, then the man who paid them their wages, and the bookkeeper who entered those payments in the accounts, are similarly engaged. For they are all employed by the carrier, and the work of each contributes to its success in hauling freight and passengers.

This view is supported by the two cognate statutes. The Hours of Service Law applies only to those "engaged in the movement of trains" and the Safety Appliance Law refers, not to machines in the shop, but to cars and locomotives, which are the immediate instruments of transportation. The Employers' Liability Act in like manner applies to those engaged in transportation and not to those employed in building, manufacturing or repairing.

The plaintiff was carrying bolts to be used in repairing a bridge. That was not interstate commerce, and in my opinion the court below properly held that his rights were to be determined by the laws of the State of New Jersey and not by the act of Congress.

MR. JUSTICE HOLMES and MR. JUSTICE LURTON concur in this dissent.