[Civil No. 1705. Filed March 22, 1920.]

[188 Pac. 257.]

# HARRIET A. SAXTON, Appellant, v. EL PASO AND SOUTHWESTERN RAILROAD, Appellee.

1. Commerce—Railroad Employee Engaged in Interstate Commerce Cannot Recover Under State Law.—A railroad employee engaged in interstate commerce cannot recover for injuries received under the state employers' liability law, the state laws being superseded by federal Employers' Liability Act of April 22, 1908 (Comp. Stats., §§ 8657–8665), which took possession of the field.

2. Commerce—Federal Liability Act Applies Only When Both Employer and Employee Are Engaged in Interstate Commerce.— The federal Employers' Liability Act of April 22, 1908 (Comp Stats., §§ 8657–8665), applies only when both employer and employee are engaged in interstate commerce.

3. Courts—Federal Decisions Control as to Whether Railway Servant Was Engaged in Interstate Commerce.—Decisions of the federal courts are controlling on the question of whether or not a railway servant was, when injured, engaged in interstate commerce, so that his rights as against his employer to recover for the injury would be controlled by federal Employers' Liability Act of April 22, 1908 (Comp. Stats., §§ 8657–8665).

4. Commerce—Railway Servant Installing Electric Block System Engaged in "Interstate Commerce."—An employee of an interstate railroad was engaged in interstate commerce when installing an electric block signal system along the main line of the railroad, the purpose of the system being to protect trains carrying both interstate and intrastate commerce, the system being attached to or connected with the rails of the track, and liability for an injury received by the employee while so engaged is governed by federal Employers' Liability Act of April 22, 1908 (Comp. Stats., §§ 8657–8665).

APPEAL from a judgment of the Superior Court of the County of Cochise. Alfred C. Lockwood, Judge. Affirmed.

Mr. David Benshimol, for Appellant.

Messrs. Boyle & Pickett, for Appellee.

BAKER, J.—This action was commenced under the state. employers' liability law (chapter 6, pars. 3153–3162, Civ. Code 1913) by the plaintiff, Harriet A. Saxton, to recover damages for the death of her son, Roy V. Saxton, alleged to have occurred while he was in the employ of the defendant, El Paso and Southwestern Railroad, as foreman of a gang of men erecting signals along the right of way of the defendant.

A plea in bar to the action was filed which stated that the defendant was a railroad corporation engaged in interstate commerce, and that the decedent was in the employment of the defendant and was engaged in interstate commerce work at the time he sustained the injuries resulting in his death. The court decided that under the facts proven the plea was well founded, and entered a judgment sustaining the plea, from which judgment the plaintiff appeals.

If the defendant was a railroad corporation engaged in interstate commerce and the decedent was in its employment engaged in interstate commerce work, the plaintiff cannot recover under the state employers' liability law. It is well settled that, since Congress, by the act of 1908, took possession of the field of the employers' liability to employees in interstate transportation by rail, all state laws upon the subject are superseded. Employers' Liability Act U. S. April 22, 1908, c. 149, 35 Stats. at Large, 65, Comp. Stats., § 8657; 8 Fed. Stats. Ann., 2d ed., p. 1208; *New York C. R. Co. v. Winfield,* 244 U. S. 147, Ann. Cas. 1917D, 1139, L. R. A. 1918C, 439, 61 L. Ed. 1045, 37 Sup. Ct. Rep. 546, 14 N. C. C. A. 680; *New York C. R. Co. v. Porter,* 249 U. S. 168, 63 L. Ed. 536, 39 Sup. Ct. Rep. 88; *Southern Pac. Co. v. Industrial Acc. Com.,* 251 U. S. 259, 64 L. Ed. 258, 40 Sup. Ct. Rep. 130.

Mr. Justice VAN DE VANTER, delivering the opinion of the court in *Wabash R. Co.* v. *Hayes*, 234 U. S. 86, 58 L. Ed. 1226, 34 Sup. Ct. Rep. 729, said:

"Had the injury occurred in interstate commerce, as was alleged, the federal act undoubtedly would have been controlling, and a recovery could not have been had under the common or statute law of the state; in other words, the federal act would have been exclusive in its operation, not merely cumulative." *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 53–55, 38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169; *St. Louis etc. R. Co.* v. *Seale*, 229 U. S. 156–158, Ann. Cas. 1914C, 156, 57 L. Ed. 1129, 33 Sup. Ct. Rep. 651; *N. C. R. Co.* v. *Zachary*, 232 U. S. 248, 256, Ann. Cas. 1914C, 159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305; *S. A. L. R. Co.* v. *Horton*, 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635 (see also, Rose's U. S. Notes).

The court below found the facts to be:

"That defendant is a railroad corporation, and is and was at all of the times mentioned in the plaintiff's complaint a common carrier by railroad, and, as such common carrier, is and was at all of said times engaged in both interstate and intrastate commerce; that Roy V. Saxton was in the employ of defendant on the twenty-seventh day of March, 1916, and on said date was injured and died as a result of injuries received; that at the time of the accident which resulted in his death the said Roy V. Saxton was employed as the foreman of a gang of men engaged in installing electric block signals along the main line of defendant's railroad between Lee Station and Moore's Spur, in Cochise county, Arizona; that said portion of the defendant's main line of railroad between Lee Station and Moore's Spur was then and for a long time past had been constantly used by trains carrying interstate and intrastate commerce; that the purpose of the block signals which the said Roy V. Saxton was then engaged in installing was to protect trains carrying both interstate and intrastate commerce along said portion of the defendant's main

line of railroad, and to render the operation of such trains safer and more convenient; that the block signals which the said Roy V. Saxton was engaged in installing were being connected with the defendant's railroad track and with the rails thereof in such manner as to work automatically, and to indicate the presence of trains, broken rails, or other obstructions; that said portion of the defendant's main line of railroad between Lee Station and Moore's Spur was then being equipped for the first time with block signals; that at the time of said accident the installation of said block signals along said portion of the defendant's main line of railroad had not been completed, and said signals were not then in actual operation; that defendant's main line of railroad was not then completed, and said signals did not begin to operate until on or about the first day of June, 1916; that the block signals then being installed along said portion of the defendant's main line of railroad were intended to be used and operated, and were afterwards, to wit, on and after the first day of June, 1916, used and operated as a separate unit or section of block signals; that at the time of the accident in which the said Roy V. Saxton was injured said unit or section of block signals between Lee Station and Moore's Spur had not been attached to or connected with any other unit, section, or system of block signals; that, in order to use and operate said unit or section of block signals between Lee Station and Moore's Spur, it was not necessary that it be attached to or connected with any other unit, section, or system of block signals, but that said unit or section between Lee Station and Moore's Spur could be and was afterwards, to wit, on and after the first day of June, 1916, used and operated as an independent unit or section of block signals; that east of the easternmost point of said unit or section of block signals then being installed, to wit, Moore's Spur, there was not at the time of said accident any block signal system or any part of a system of block signals, either under construction or in operation, in the state of Arizona, on the line of the defendant's railroad, or any block signal system or part of a block signal system leading into the next easternmost state, to wit, New Mexico.''

It is conceded that the defendant was a railroad corporation engaged in interstate commerce. But the federal act only applies when both the employer and employee are engaged in interstate commerce. It may be that a railroad company is at all times engaged in interstate commerce, but 'many of its employees may be, at different times and places, not so engaged or employed. *In re Second Employers' Liability Cases,* 223 U. S. 1, 49, 38 L. R. A: (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169; *Illinois Central R. Co.* v. *Behrens,* 233 U. S. 473, Ann. Cas. 1914C, 163, 58 L. Ed. 1051, 34 Sup. Ct. Rep. 646; *Wagner* v. *Chicago etc. R. Co.,* 200 Ill. App. 305. So the concrete question in the present case is, Did the work in which the decedent was engaged at the time the accident occurred which caused his death constitute employment in interstate commerce? The answer may be found, we think, in the decisions of the federal courts which are controlling in a question of this kind, particularly in *Southern Pac. Co.* v. *Industrial Acc. Com., supra,* where the following test is suggested to solve the problem:

"Generally, when applicability of the federal Employers' Liability Act is uncertain, the character of the employment, in relation to commerce, may be adequately tested by inquiring whether, at the time of the injury the employee was engaged in work so closely connected with interstate commerce transportation as practically to be a part of it"—citing *Pederson* v. *Delaware etc. R. Co.,* 229 U. S. 146, 151, Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 1127, 33 Sup. Ct. Rep. 648, 3 N. C. C. A. 779; *Shanks* v. *Delaware etc. R. Co.,* 239 U. S. 556–558, L. R. A. 1916C, 797, 60 L. Ed. 436–438, 36 Sup. Ct. Rep. 188 (see also, Rose's U. S. Notes); *New York C. R. Co.* v. *Porter, supra; Kinzell* v. *Chicago, M. & St. P. R. Co.,* 250 U. S. 130–133, 63 L. Ed. 893, 896, 39 Sup. Ct. Rep. 412.

The accident under consideration occurred while the decedent was engaged in installing an electric

block signal system along the main line of defendant's railroad. The purpose of the system was to protect trains carrying both interstate and intrastate commerce passing along the defendant's main line of railroad, and to render the operation of such trains safer and more convenient. The system was being attached to or connected with the rails of the track in such a manner as to work automatically, and to indicate the presence of trains, broken rails or other obstructions. It was not to be separate and apart from the track, something operating independently of the track, or independently of the, interstate commerce in which the defendant was engaged, but it was to be, in a very material sense, a part and parcel of the track itself—something attached to and operated in connection with the track in carrying on interstate commerce. We think it clear that the defendant was engaged in doing something which was not only connected with interstate commerce, but was practically a part of it. We can see no just reason for holding that attaching or connecting the system to the rails was not interstate commerce to the same extent as repairing or improving the track itself. There are numerous cases holding that repairing or improving tracks, bridges, switches, etc., is interstate commerce. *New York C. R. Co.* v. *Winfield, supra; Lombardo* v. *Boston etc. R. Co.* (D. C.), 223 Fed. 427; *Zikos* v. *Oregon etc. R. Co.* (C. C.), 179 Fed. 893; *Colasurdo* v. *Central R. Co.* (C. C.), 180 Fed. 832. In the case of *Pederson* v. *Delaware etc. Co., supra,* the plaintiff was employed in connection with repairing a bridge used, in both interstate and intrastate commerce. While crossing a temporary bridge used in place of the bridge being repaired, carrying a sack of bolts and rivets to be used in repairing the bridge, he was injured. The court held that the act (federal employers' liability law) would not apply

before the track equipment, etc., had become an instrumentality, but work done on an instrumentality during its use in interstate commerce makes it applicable.

In *North Carolina R. Co.* v. *Zachary,* 232 U. S. 248, Ann. Cas. 1914C, 159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305, a fireman whose engine had not yet been coupled to the interstate commerce cars left his engine, crossed the tracks to go to his boarding-house, and was struck by an interstate train. It was held that he was injured while engaged in interstate commerce. The court said:

"It is argued that because, so far as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not, as yet, been attached to his engine, his employment in interstate commerce was still *in futuro.* It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight-cars had not as yet been coupled up is legally insignificant."

In *Southern R. Co.* v. *McGuin,* 240 Fed. 649, 153 C. C. A. 447, it was held that a section-hand engaged in working with a road engineer, who was surveying and setting stakes with a view of improving a curve by a slight change in the track, was engaged in interstate commerce, although, as a matter of fact, the change in the track was never made.

In *Eng* v. *Southern Pac. Co.* (D. C.), 210 Fed. 92, it was held that an employee in framing up a new office in a freight-shed used for both interstate and intrastate commerce was doing interstate commerce work. The court said:

"Claim is made that, since plaintiff at the time of his injury was at work in framing a new office in the freight-shed, he is in the position of one employed to construct buildings, tracks, engines, or cars, which

have not yet become instrumentalities of commerce. But the freight-shed in question was being so used by the defendant in its interstate business. The work in which the·plaintiff was engaged, as appears from the complaint, was in the nature of the repair of an instrumentality so used, and not the construction of new work.''

Obviously, the numerous cases in which the work on things which had not at the time become instruments of interstate commerce have no application. See *Jackson* v. *Chicago, M. & St. P. R. Co.* (D. C.), 210 Fed. 495; *Bravis* v. *Chicago, M. & St. P. R. Co.*, 217 Fed. 234, 133 C. C. A. 228; *Chicago & E. R. Co.* v. *Steele*, 183 Ind. 444, 108 N. E. 4. Here the decedent was engaged in doing work on an instrumentality already existing and being used in interstate commerce. This fact is the distinguishing feature of the case. No sound distinction can be founded on the fact that the system was not completed or in operation when the accident occurred. Such a distinction would exclude all unfinished work from the operations of the federal act.

We might safely rest our decision upon the federal cases cited, but in addition thereto our attention has been called to several decisions of state courts holding ·point-blank that one engaged in installing an electric block signal system upon the rails of the ·roadbed of a railroad company is engaged in interstate commerce work. Such was the ruling in *Glunt* v. *Pa. R. Co.*, 249 Pa. 522, 95 Atl. 109. A similar ruling has been made in two other cases—*Saunders* v. *Southern R. Co.*, 167 N. C. 375, 83 S. E. 573; *Grow* v. *Oregon S. L. R. Co.*, 44 Utah, 160, Ann. Cas. 1915B, 481, 138 Pac. 398. The case of *Perez* v. *Union Pac. R. Co.*, 52 Utah, 286, 173 Pac. 236, distinguishes the Grow case, and somewhat reflects upon it as an authority. In the case it is said:

"Assuming that the majority opinion states the law correctly, we fail to see wherein it supports appellant's contention in the present case. There was at least, in the Grow case, the probability that the work the deceased was doing when he was killed would at some time be utilized for interstate commerce, at least it was intended to be so used by the defendant, who was having the system installed. In this respect the case is completely distinguished from the case at bar."

We think, however, that the Grow case remains unimpaired as an authority. As bearing further upon the question of the character of the work the decedent was performing at the time the accident occurred, and as tending to show that it was interstate commerce work, we quote from Doherty on Liability of Railroads to Interstate Employees, page 89, where it is said:

"The act (federal Employers' Liability Act) may fairly be interpreted to include all mechanics who are engaged at the time of the injury upon instrumentalities which are generally and indiscriminately used for all purposes of an interstate railroad, as, for instance, linemen, track repairers, and laborers engaged in the general maintenance of the interstate highway or its signal wires or apparatus and those whose duties relate to the construction, maintenance, and repair of those instrumentalities which are used in the business conducted by the interstate railroad without discrimination between the local or interstate character of its traffic."

We think the facts of the case point irresistibly to the conclusion that the decedent was injured while engaged in interstate commerce as contemplated by the federal statute. It follows that the judgment of the lower court sustaining the plea in bar must be, and the same is hereby, affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.