**TEXAS & P. RY. CO. v. KELLY.**

No. 1564—5905.

Commission of Appeals of Texas, Section A.

June 9, 1932.

T. D. Gresham, of Dallas, and King, Mahaffey, Wheeler & Bryson, of Texarkana, for plaintiff in error.

S. P. Jones and Franklin Jones, both of Marshall, and J. A. R. Moseley, Jr., of Texarkana, for defendant in error.

SHARP, J.

B. F. Kelly, Jr., sued the Texas & Pacific Railway Company for damages resulting from personal injuries suffered through its negligence while he was in its employ near Alexandria, La., and rested his right to recover upon the Federal Employers' Liability Act of Congress (45 USCA § 51 et seq.). He recovered a judgment for the sum of $15,000. An appeal was made to the Court of Civil Appeals at Texarkana and the judgment of

the trial court was affirmed. 35 S.W.(2d) 749. A writ of error was granted.

The plaintiff in error complains of the action of the Court of Civil Appeals in affirming the judgment of the trial court, because under an agreement by the litigants it was stipulated that Kelly was not entitled to recover only under the Federal Employers' Liability Act; and because the undisputed evidence showed that he was not entitled to recover under that act for the reason that when injured he was not engaged in interstate commerce and was not engaged in any way so nearly connected with or related to interstate commerce as to be a part of such commerce within the scope and purposes of the act.

On the contrary, Kelly contends that the work he was performing at the time he was injured came within the provisions of the act, and that by reason thereof the railroad company was liable for the injuries sustained by him.

Thus the sole question presented for decision is: Was Kelly engaged in work which was a part of interstate transportation at the very time the accident happened in which he received his injuries? If he was not so engaged, then Kelly cannot recover because he brought his action under the Federal Employers' Liability Act and at the trial it was .greed "in this suit that the plaintiff seeks his recovery herein entirely under the provions of the Federal Employers' Liability Act, and not under the common law, or any statutory law of the State of Texas or the State of Louisiana."

It is undisputed that the main line of the Texas & Pacific Railway Company extends from New Orleans to points in Texas. That the railroad company was engaged daily in interstate commerce over the tracks in controversy. Texmo Junction is a point in the western suburbs of the city of Alexandria where the main line of the Missouri Pacific Railroad intersects the main line of the Texas & Pacific Railway Company. The two railway companies jointly maintain what was called the "Alexandria Terminal." The Texas & Pacific Railway Company owned the double track leading from the Texmo Junction crossing through the terminal yards to and beyond the passenger station at Alexandria.

The following facts seem to be undisputed: Several weeks before the date of the injury in suit, a crew of workmen, of whom the appellee was one under Mr. McGawan as foreman, had been engaged in erecting, placing in position, and making ready for use, a complete interlocking system of signals in the terminal at Texmo Junction and through the terminal. By means of this complete mechanical apparatus or plant, all trains were to be controlled and managed in passing over the crossings, switch, and yard tracks. The system was shown to add greatly to the safety of railway traffic. At the time of the injury and the placing of this mechanical plant, the trains of appellant and the other railway companies were controlled in their movements over the crossing and switches by means, viz., after the train had come to a stop, the trainman from the train, after seeing that the crossing or track was not to be used by another train, would, by means of a hand-operated switch, turn and set the switch to permit his train to pass on over the crossing, switch, or yard track. The interlocking system of signals being put in was shown to consist of interrelated levers and light, controlled from a tower located at the crossing. It was a system of devices whereby signals denoting the positions of the switches at crossings and track junctions are, by means of locking mechanism, connected with and controlled by the switch mechanism, in such manner that any movement of the switches operates the proper signals to indicate to train operatives the position in which the switch is set. The interlocking levers, or levers connected to the rods running by the tracks, lock the "switch points," or the end of the rails, so that the rails or switch could not inadvertently be thrown or opened while a train is moving over the track. Mr. McGawan, the foreman, says: "A mechanical interlocker is a device so arranged that you cannot run but one train at a time through a certain track. It is upstairs (in the tower house) on a machine. It is locked with locking-bars. It is so arranged that you cannot pull one lever unless all the tracks are lined up and set in the right manner. In pulling a lever, you throw (and set) your switches on the ground. It makes a safety device for trains. The lights are up the track in the proper places. You have a signal lever you use to throw to give the proper light. It has an electrical connection that makes a contact with the other lights. The mechanism of this device is in the tower house, and it is handled by man-power. A man situated in the tower house operates it."

At the time of the injury in suit, the tower house, a three-story building, was built and the interlocker was installed therein. The rods or "pipe line," as termed, leading from the tower house to the points on the track where the switches were located, were all laid and completed, but were not physically connected up or attached to the bridle rods of the switches for operation and control of the switch points or ends of the rails. The required special bridle rods for connecting up the switches had already been placed on the switches. There were five switches to be operated. No new switches or rails were put in. The work done on the switches was such only as attaching rods and insulation plates. The electric appliances and signal stands and

light poles to be used in connection with the interlocker had not all been installed but were being installed. The wiring or handing of the rails had been done. No changes had been made or were being made in the road-bed or rails, further than to put new ties, instead of letting the old ties remain under the rails at the switches.

The following is the situation as appears in the testimony of Mr. McGawan, the fore-man: "I had charge of putting in the interlocking system. It is in general use all over the country at railway crossings and intersections. It was necessary in putting in this interlocker for us to first install the interlocker in the tower. We (had) built concrete for the pipeline and (had) ran a pipeline on the concrete foundation to all the switches. The signal foundations were all made in Marshall. We had done lots of work on the switches such as putting ties under the pipe plates, erecting signal wire, lights and cables. The interlocker was not connected up with the switch points. The switches were not put into service on account of the signals. You could not work them without the signals. Everything was put up so that you could have connected up the switches, but they were not connected up so that you could use the levers. They were not actually connected. We had not used it and it was not ready to use. The electricity had not been installed. In the tower house all of the electrical appliances had been put in. We were still installing them in the tower house. We were putting in the signals to be used in connection with the interlocker. The man who operated the interlocker also operated the signal lights. The signal lights had not been put in use. We were putting in the concrete foundations for the signal mast or pole when Mr. Kelly was hurt. The mast or pole was to be twelve feet high. That light had not been completed. The wire was on the ground but was not there at this point—all that had to be done to connect the physical mechanism of the various switches and the tower house at the time Mr. Kelly was injured was to actually make a physical connection between the ends of the rods and the switches themselves, and tear away the old switch stands that were there. We had all the material there in position to do that, but did not do so until we got the wiring all in and were ready to turn on the lights. We were erecting a block for a foundation for a mast or pole upon which to place the signal light when Mr. Kelly was injured. We were putting in the blocks and erecting the light poles and finishing the wiring from the tower house to each of these signals."

Mr. Clover, the signalman, testified: "This electrical system was completed and put into operation about two weeks after Mr. Kelly was injured, I would guess. It was for the purpose of controlling the movement of trains in and through the Alexandria terminal and yard."

Mr. Kelly was injured while and during the laying of the foundation for the signal pole near the point where the Texas & Pacific and the Missouri Pacific tracks crossed.

All of the facts above stated appear without dispute.

At the time of the injury, a concrete block weighing about 7,000 pounds was being moved by the use of a tripod to set as a foundation for the electric light or signal pole. He and six other members of his crew under the direction of the foreman were placing in position this concrete block. The block had been brought opposite the place where it was to be set on a pushcar, and had been lifted from the pushcar by means of a tripod onto the ground alongside the track. By means of this tripod and its appurtenant tackle, the crew were endeavoring to lift this block from the ground and, by degrees, push it over towards the south and into an excavated place made in which to set it.

We are indebted to the Court of Civil Appeals for the foregoing statement of facts.

The Federal Employers' Liability Act provides that "every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." (45 USCA § 51.)

It was the purpose of Congress in the enactment of this act to protect railroad employees who come under its provisions. It being undisputed that the railroad company was engaged in interstate commerce, the sole question for decision is whether Kelly was employed in such commerce within the meaning of the act as construed by the Supreme Court of the United States. This is a federal question. Congress has seen fit to legislate upon this question, and all local or state laws become immaterial. The construction of this act by the Supreme Court of the United States is supreme and will be enforced without regard to the views of the state courts. Chesapeake & O. Ry. Co. v. Kuhn, 284 U. S. 44, 52 S. Ct. 45, 76 L. Ed. ——; Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 57, 58, 32 S. Ct. 169, 56 L. Ed. 327, 349, 350, 38 L. R. A. (N. S.) 44.

This act has been repeatedly construed by the Supreme Court of the United States. Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 36 S. Ct. 188, 60 L. Ed. 436, 438, L. R. A. 1916C, 797; Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 179, 36 S. Ct. 517, 60 L. Ed. 941, 942, 11 N. C. C. A. 992; Southern Pac. Co. v. Industrial Accident Commission, 251 U. S. 259, 263, 40 S. Ct. 130, 64 L. Ed. 258, 260, 10 A. L. R. 1181; Industrial Accident Commission v. Davis, 259 U. S. 182, 185, 42 S. Ct. 489, 66 L. Ed. 888, 891;

Baltimore & O. S. W. R. Co. v. Burtch, 263 U. S. 540, 543, 44 S. Ct. 165, 68 L. Ed. 433, 436, 24 N. C. C. A. 42; Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790, 21 N. C. C. A. 1; Erie R. Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794; Illinois Cent. R. Co. v. Cousins, 241 U. S. 641, 36 S. Ct. 446, 60 L. Ed. 1216; Pedersen v. Delaware, L. & W. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779; Kinzell v. Chicago, M. & St. P. Ry. Co., 250 U. S. 130, 39 S. Ct. 412, 414, 63 L. Ed. 893; New York Central Railroad Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 248, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Raymond v. Chicago, M. & St. P. Ry. Co., 243 U. S. 43–45, 37 S. Ct. 268, 269, 61 L. Ed. 583.

We will briefly review some of the leading cases bearing upon this question.

In New York Central Railroad Co. v. White, supra, the facts were that White was a night watchman in the employ of the railroad company, charged with the duty of guarding tools and materials intended to be used in the construction of a new station and new tracks upon the line of an interstate railroad. While engaged in the performance of his duties, he received injuries resulting in his death. The question before the Supreme Court of the United States primarily was whether compensation should be paid under the Workmen's Compensation Law of the State of New York (Consol. Laws N. Y. c. 67), or whether there was liability under the Federal Employers' Liability Act (45 USCA §§ 51–59), which, if true, would exclude the recovery of compensation under the Workmen's Compensation Law of New York. In disposing of the case the court said: *"The admitted fact that the new station and tracks were designed for use, when finished, in interstate commerce, does not bring the case within the Federal act. The test is, 'Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?'* Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 60 L. Ed. 436, 438, L. R. A. 1916C, 797, 36 S. Ct. 188. Decedent's work bore no direct relation to interstate transportation, and had to do solely with construction work, which is clearly distinguishable, as was pointed out in Pedersen v. Delaware, L. & W. R. Co., 229 U. S. 146, 152, 57 L. Ed. 1125, 1128, 33 S. Ct. 648, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779. And see Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 180, 60 L. Ed. 941, 942, 36 S. Ct. 517, 11 N. C. C. A. 992; Raymond v. Chicago, M. & St. P. R. Co. this day decided (243 U. S. 43, 61 L. Ed. 583, 37 S. Ct. 268). The first point, therefore, is without basis in fact." (Italics ours.)

In Raymond v. Chicago, M. & St. P. R. Co., supra, the facts were that Raymond was engaged as a laborer, when injured, in the construction of a tunnel which, when completed, would be about 14,000 feet in length and the tunnel being intended to shorten the line which at the time ran over the mountain through which the tunnel was located. Chief Justice White, speaking for the Supreme Court of the United States, held: "Considering the suit as based upon the Federal Employers' Liability Act, it is certain, under recent decisions of this court, whatever doubt may have existed in the minds of some at the time the judgment below was rendered, that, under the facts as alleged, Raymond and the railway company were not engaged in interstate commerce at the time the injuries were suffered, and consequently no cause of action was alleged under the act. Delaware, L. & W. R. Co. v. Yurkonis, 238 U. S. 439, 59 L. Ed. 1397, 35 S. Ct. 902; Chicago, B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 60 L. Ed. 941, 36 S. Ct. 517, 11 N. C. C. A. 992; Minneapolis & St. L. R. Co. v. Nash, 242 U. S. 619, 61 L. Ed. 531, 37 S. Ct. 239."

The case of Kinzell v. Chicago, M. & St. P. R. Co., supra, involved an injury to an employee while assisting in filling with earth a wooden trestle work bridge 1,200 feet in length, by which its track was carried across a dry gulch or coulee; the purpose being to continue the track on a solid embankment when it should be completed. A "dozer" was used to spread out the dirt piled on the track. The court discussed the rules applicable to interstate transportation, held that Kinzell was protected by the act, and stated the facts upon which the opinion was based as follows: "It is in evidence in this case, indeed, it is obvious, that the 'dozer' was not called into use until the fill had reached the level of the tops of the ties and had become of such width that the earth when dumped would pile up near the track so as to fall back upon it, if not removed, and that it was used for the double purpose of keeping the rails clear for the interstate commerce passing over them and for pushing the material to the edge of the embankment to widen it. When to this it is added that a part of Kinzell's duty was, with a shovel, to keep the track between the rails clear of earth and stones, which might fall upon it in the progress of the work, clearly it cannot be soundly said that when he was in the act of preparing to make the required use of the 'dozer' he was acting independently of the interstate commerce in which the railway company was engaged, or that the performance of his duties was a matter of indifference to the conduct of that commerce. He was 'employed' in keeping the interstate track, which was in daily use, clear and safe for interstate trains, or, as the superintendent of the railway company stated it, he was engaged with the 'dozer' and shovel in making the track safe for the operation of trains and in avoiding delay to the commerce passing over it. Thus the case falls plainly within the scope

of the decisions which we have cited, supra, and, *regardless of what might have been said of the fill before, it had clearly become a part of the interstate railway when the petitioner was injured, for it had reached the stage where it required the work of men and machinery to keep the interstate tracks clear during further construction, and the work of such men was thereafter not only concerned with, it was an intimate and integral part of, the conducting of interstate transportation over the bridge.*" (Italics ours.)

Since this case was decided by the Court of Civil Appeals, the Supreme Court of the United States has recently construed the former opinions of that court with respect to the Liability Act. The cases recently decided are: Chicago & N. W. R. Co. v. Bolle, 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 173; Chicago & E. Illinois R. Co. v. Industrial Commission, 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 304; New York, New Haven & Hartford R. Co. v. Clarence Bezue, 284 U. S. 415, 52 S. Ct. 205, 207, 76 L. Ed. 370.

In the case of Chicago & Northwestern Railway Co. v. Bolle, supra, the court reviewed the opinions bearing upon this question. That in the construction of this act the terms "transportation" and "commerce" had been used as being interchangeable. This rule was criticized, and the court held: Hence the test of whether an employee at the time of his injury is engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation or in work so closely related to such transportation as to be practically a part of it.

Again, in the case of Chicago & Eastern Illinois Railroad Co. v. Industrial Commission of Illinois, the Supreme Court reviewed the various decisions construing the Federal Employers' Liability Act and held that the liberal rule announced in the Szary and Collins Cases was wrong and those cases were expressly overruled.

Furthermore, in the case of New York, New Haven & Hartford Railroad Co. v. Bezue, which seems to be the latest expression of the Supreme Court of the United States upon this question, that court announced the following general rules:

■ (a) The mere fact of employment by an interstate railroad does not bring an employee within the Federal Employers' Liability Act.

■ (b) The criterion of applicability of the Federal Employers' Liability Act is the employee's occupation at the time of his injury in interstate transportation or work so closely related thereto as to be practically a part of it.

(c) The Federal Employers' Liability Act is inapplicable to a laborer injured while assisting in handling the driving wheels of a locomotive used in interstate transportation, but which at the time of the injury to the employee was not in use as an instrumentality of interstate transportation.

■■ The court, after reviewing the various cases bearing upon this question in its opinion, said: "Under the circumstances of this case, whether respondent is within the act must be decided not by reference to the kind of plant in which he worked, or the character of labor he usually performed, but by determining whether the locomotive in question was, *at the time of the accident, in use in interstate transportation or had been taken out of it.*" (Italics ours.)

Let us test the facts involved in this case in the light of the foregoing rules. The testimony shows that the railroad company had installed for its use at the crossing certain devices which were operated by the trainmen to permit the trains to cross the intersecting tracks. The testimony is undisputed that McGawan, as foreman, under whom Kelly worked, "had been engaged in erecting, placing in position and making ready for use, *a complete interlocking system of signals in the terminal at Texmo Junction and through the terminal.*" It is undisputed that at the time of the injury to Kelly the system was not complete. The wires which were necessary for the operation of the new system had not been connected. It had never been used as an instrumentality of interstate transportation prior to the time of Kelly's injury. The system was completed and put in operation about two weeks after Kelly was injured. It is undisputed that the interlocking system would not be used in any way for the operation of trains until the wires were connected and it was complete. If Kelly had been at work on the track, which was being used by trains in the transportation of interstate commerce, or if he had been at work upon a bridge likewise used in interstate transportation, or if he had been working upon the levers and parts of the device used by the railroad company in the operation of its tracks, he would come within the provisions of the Federal Employers' Liability Act. In other words, as we construe the opinions of the Supreme Court of the United States, it is held that the Federal Employers' Liability Act protects only those employed in interstate transportation. Those employed to work upon roadbeds, rails, ties, cars, engines, and other instrumentalities, which are intended for use in interstate transportation, but which have never been and are not in use therein, are not protected by that act. A distinction has been drawn between construction work and repair work, and it is held that an employee engaged in repairs on an appliance which is an integral part of interstate transportation is within the provisions of the act, but if the employee is employed at the

time of his injury in the making of new appliances to be used in the future, is not so engaged and will not be protected by the act.

In view of the foregoing authorities and the undisputed facts involved in this case, we are constrained to hold that Kelly was not protected by the provisions of the Federal Employers' Liability Act and therefore not entitled to recover by reason of this suit.

Therefore, we recommend that both the judgments of the district court and the Court of Civil Appeals be reversed, and that judgment be rendered herein in favor of the Texas & Pacific Railway Company.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.