[L. A. No. 14973. In Bank.—March 25, 1935.]

LOS ANGELES & SALT LAKE RAILROAD COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and VERNON C. PEEPLES, Respondents.

686

E. E. Bennett, Malcolm Davis and Edward C. Renwick for Petitioner.

Everett A. Corten and Emmet J. Seawell for Respondents.

SHENK, J.—On November 5, 1932, Vernon C. Peeples filed with the Industrial Accident Commission an application for compensation on account of injuries suffered while he was employed by the petitioner, Los Angeles & Salt Lake Railroad Company, at Elgin, Nevada. The commission entered its decision and order on rehearing awarding compensation to the injured employee. The employer was self-insured, and in this proceeding to review the exercise of jurisdiction by the commission seeks to have the award annulled.

The applicant, Peeples, had previously been employed in California by the petitioner. The work which he had been hired to do in California terminated. Subsequently George E. Hodgdon, assistant signal supervisor in charge of maintenance and construction of signal apparatus on the Los Angeles division of the petitioner, informed the applicant that there was work in Utah and furnished him with transportation to that state. Upon his arrival in Utah the applicant was assigned to assist in the construction and installation of a detour in the company's power line near Elgin, Nevada. About December 19, 1930, the applicant was engaged in stringing a line of cable on new poles which had recently been set up and which was to become a part of the existing power line when completed. The existing line started at Los Angeles and terminated at Salt Lake City, Utah. It carried wires for the use of the company in the operation of the signals along the line and in the sending of telegraph and telephone messages. The detour in the line was designed to provide free working space around the entrance of tunnel No. 4, which was required for the spurring out of outfit cars and the erection of buildings in connection with tunnel construction work. The applicant was moving a cable which was to be strung on a new pole about intermediate the newly constructed detour and the signal pole at the entrance of the tunnel. The cable caught on some dry brush which snapped and flew into the applicant's left eye, causing permanent impairment of the vision of that eye.

In the seventh month after the injury occurred the applicant accepted the sum of $250 from the petitioner and signed a release. This occurred before any application for

compensation was filed and was without the approval of the respondent commission. The application for compensation was filed in November, 1932. The commission by its decision on rehearing awarded a total sum of $1131.63, less the sum of $250 paid by the employer.

It was admitted that the injury occurred in the scope of and arose out of the employment. On this review three questions are presented for determination. ■ The first is based upon the contention of the petitioner that the commission had no jurisdiction to make an award because the provisions of section 11 of the act constituted a bar. Section 11 (b) (1) of the act (Stats. 1917, chap. 586) provides that proceedings for the collection of the benefits payable to the applicant must be commenced within six months from the date of the injury, except as otherwise provided in the act. Section 27 (b) of the act provides that no release of the employer's liability except for the payment of the full compensation shall be valid unless approved by the commission, and subdivision (e) of said section 27 provides that unless such approval has been obtained, the making of a release or compromise for less than the full compensation shall extend the limitation of time hereinbefore mentioned to two years from the date of the injury. By its answer to the application for compensation the petitioner affirmatively pleaded the bar of the six months' limitation. The commission, however, inferentially found that the payment of the $250 to the applicant had extended the period to two years and concluded that both employer and employee were properly before it under the provisions of the act. The petitioner contends that inasmuch as the compromise and release was effected after the six months' period had elapsed, the bar of the limitation had already attached and could not therefore be "extended". However, any further consideration of the question whether the commission properly exercised its jurisdiction in this respect was waived by the failure of the petitioner to include the matter as a ground of objection in its petition for rehearing before the commission. (Sec. 64 [c] of the act.)

■ The second contention of the petitioner is that the commission incorrectly decided that the contract was made in California so as to make the parties amenable to the act pursuant to the provisions of section 58 thereof. That sec-

tion gives the commission jurisdiction over all controversies arising out of injuries suffered without the territorial limits of the state, where the contract of hire was made in the state. (*Quong Ham Wah* v. *Industrial Acc. Com.*, 184 Cal. 26 [192 Pac. 1021, 12 A. L. R. 1190].) It is urged in support of this point that Hodgdon had no authority to engage the applicant to work in Utah or Nevada, and therefore there was no contract made in California, but that the only conclusion to be drawn from the evidence is that Hodgdon merely suggested to Peeples that he might go to Utah, where work was being offered and that the contract of employment was in fact made when Peeples arrived in the latter state. The commission and not the court is to draw inferences from the evidence and base conclusions thereon. (Sec. 67 (c) of the act.) From the evidence before it the commission was within its province in concluding that Hodgdon had authority to hire the applicant.

The third and main question in the case arises from the petitioner's defense that the applicant was subject solely to the provisions of the Federal Employer's Liability Act, and its contention that the commission exceeded its jurisdiction in ordering payment of compensation under the state act. ■ The remedies under the Workmen's Compensation Act and the Federal Employer's Liability Act (chap. 149, 35 Stat. 65; title 45, chap. 2, U. S. C.) are not cumulative, so that if under the facts the provisions of the latter act apply, the applicant may not recover under the state act. (*Saxton* v. *El Paso & S. W. R. Co.*, 21 Ariz. 323 [188 Pac. 257], and cases cited therein.)

■ Under the federal act both the employer and employee at the time of the injury must have been respectively engaged and employed in interstate commerce. The act states: "Every common carrier by railroad while engaging in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce" where the injury is due to the negligence of the carrier, its agents or employees. It is not questioned that the petitioner was engaged in interstate commerce. The test to be applied in determining whether the applicant was so employed is stated in *Shanks* v. *Delaware L. & W. R. Co.*, 239 U. S. 556, 558 [36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797]; as

follows: "Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion . . . , and that the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." This test has been adhered to in subsequent cases. (*Chicago & N. W. Ry. Co.* v. *Bolle,* 284 U. S. 74 [52 Sup. Ct. 59, 76 L. Ed. 173]; *Chicago & Eastern Ill. R. Co.* v. *Industrial Com. of Illinois,* 284 U. S. 296 [52 Sup. Ct. 151, 76 L. Ed. 304]; *New York, N. H. & H. R. Co.* v. *Bezue,* 284 U. S. 415 [52 Sup. Ct. 205, 76 L. Ed. 370, 77 A. L. R. 1370]; *Chicago, Burlington & Q. R. Co.* v. *Harrington,* 241 U. S. 177 [36 Sup. Ct. 517, 60 L. Ed. 941]; *New York Cent. R. R. Co.* v. *White,* 243 U. S. 188 [37 Sup. Ct. 247, 61 L. Ed. 667, Ann. Cas. 1917D, 629, L. R. A. 1917D, 1]; *Industrial Acc. Com.* v. *Davis,* 259 U. S. 182 [42 Sup. Ct. 489, 66 L. Ed. 888]; *Texas & P. Ry. Co.* v. *Kelly,* (Tex. Com. App.) 51 S. W. (2d) 299, 301; *certiorari* denied, 287 U. S. 644 [53 Sup. Ct. 90, 77 L. Ed. 557].)

In *Chicago & N. W. Ry. Co.* v. *Bolle, supra,* at page 78, it was said: "It will be observed that the word used in defining the test is 'transportation', not the word 'commerce'. The two words were not regarded as interchangeable, but as conveying different meanings. Commerce covers the whole field of which transportation is only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce, and hence the test of whether an employee at the time of his injury was engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation or in work so closely related to such transportation as to be practically a part of it." The decisions in the cases of *Industrial Acc. Com.* v. *Davis, supra,* and *New York, N. H. & H. R. Co.* v. *Bezue, supra,* the latter referring among other cases to *Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439 [35 Sup.

Ct. 902, 59 L. Ed. 1397], further emphasize the fact that interstate railroad transportation cannot be conducted without its necessary corps of persons engaged in various classes of labor and clerical work, all of which might not be employment in interstate commerce, and that it is therefore not the fact of employment alone which is determinative.

Applying the test of the Shanks case when it becomes necessary to determine whether the employee's duties, though not directly concerned with interstate transportation, "are so closely related to such transportation as to be practically a part of it", the decisions have made a distinction between employment in respect to construction, facilities or equipment which have not as yet become a part of or been used or operated in interstate transportation, or have been withdrawn from such use or operation, and equipment and facilities which are at the time already in such use or operation. A distinction between new construction and repair work was made in the case of *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146 [33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153], and in many other cases. In that class of cases where the construction, facilities or equipment have not as yet become a part of the system used in interstate transportation, although intended for such use and operation, and in fact subsequently put to such use, or where they have been withdrawn, even temporarily, from such use, it has been held that the employee is not subject to the provisions of the federal act. (*New York, N. H. & H. R. Co.* v. *Bezue,* 284 U. S. 415 [52 Sup. Ct. 205, 76 L. Ed. 370, 77 A. L. R. 1370]; *Raymond* v. *Chicago, M. & St. P. R. Co.,* 243 U. S. 43 [37 Sup. Ct. 268, 61 L. Ed. 583]; *New York Cent. R. R. Co.* v. *White,* 243 U. S. 188 [37 Sup. Ct. 247, 61 L. Ed. 667, Ann. Cas. 1917D, 629, L. R. A. 1917D, 1]; *Industrial Acc. Com.* v. *Davis, supra;* see, also, *Williams* v. *Schaff,* 282 Mo. 497 [222 S. W. 412].)

In *Industrial Acc. Com.* v. *Davis, supra,* at page 187 [259 U. S.], Mr. Justice McKenna said: "The federal act gives redress only for injuries received in interstate commerce. But how determine the commerce? Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement, indeed, are necessary to it, but so are all attached to the railroad

company, official, clerical or mechanical. Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employee at the time of the injury must be engaged in interstate transportation, or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the federal act. And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances. . . . And it is this separation that gives character to the employment, as we have said, as being in or not in commerce.''

In *New York, N. H. & H. R. Co.* v. *Bezue, supra,* the court refused to adopt what it designated an ''artificial classification'', and rejected the contention of the petitioner that a locomotive withdrawn from service for a periodical boiler wash was nevertheless still in service.

We think it unnecessary to extend the discussion, or the list of decisions which we believe compels the conclusion that in the present case the applicant was not employed in interstate transportation nor in work so closely related to it as to be practically a part of it. The trend of the decisions of the Supreme Court of the United States appears to be to draw the line under the rule of the Shanks case with clearer precision, based on the test of whether the construction, or other equipment upon which the employee is engaged in work, is or is not at the moment actually a part of the facilities operating the interstate movement of persons and commodities. In *Texas & P. Ry. Co.* v. *Kelly,* (Tex. Com. App.) 51 S. W. (2d) 299 (*certiorari* denied, 287 U. S. 644 [53 Sup. Ct. 90, 77 L. Ed. 557]), the construction of a new block system was involved and it was held that the employee injured while working in the construction of the new system was not engaged in work which was a part of interstate transportation so as to come within the provisions of the federal act. The same tests applied

to the facts before us lead to the same conclusion. This is not a case such as *Pedersen* v. *Delaware, L. & W. R. R., supra,* where mere repair work upon an existing construction already in use in interstate commerce was involved. Here a portion of the existing system was being reconstructed to provide a detour or a change in the routing of the system, and the old line was kept in operation until the new portion should be completed and the connection through the detour made. At the time of the injury the new portion was still incomplete and the connection had not yet been made so as to make it a portion of the line which may be said to have the definite character of an instrumentality employed in interstate transportation. This character had not as yet been transmitted to the incompleted and detached portion of the line which the employee was helping to construct.

The foregoing decisions of the Supreme Court are persuasive and are deemed controlling. They point to and justify the conclusion that the petitioner herein has not made a showing of facts sufficient to displace the state's jurisdiction in the premises.

The award is affirmed.

Curtis, J., Langdon, J., Preston, J., Thompson, J., and Waste, C. J., concurred.